### NAPIER *v.* LITTLE *et al.*

1. It is not competent to allow the scrivener who wrote the will to testify what the intention of the testator was as to the devise of certain lands, or what the scrivener's intention was with reference to describing the boundaries of the lands devised.

(a) Where the boundaries of lands devised by a will are fixed, and this fact is patent upon the face of the will itself, but the description of the land comprised within those boundaries is ambiguous, parol testimony is admissible to adjust the description to the boundaries so fixed, but not for the purpose of changing the boundaries.

2. For color of title to be the basis of prescription, the instrument under which it is asserted must purport to describe the land in controversy.

(a) In joint actions for the recovery of land, it is error for the court to charge the jury that "if you believe from the testimony in this case, and all these are questions of fact for you to pass upon, that this action was commenced by these plaintiffs at any time within the statute

after the youngest became of age, they would not be barred;" but under the facts of this case, this error was harmless.

3. A map made by a surveyor, proved to be correct, of the premises sued for in an action for land, and of other tracts adjacent thereto, is admissible to go to the jury to illustrate other testimony in the case, and for the purpose of throwing light on the location of the land in controversy.

NOVEMBER 16, 1911. REHEARING DENIED DECEMBER 15, 1911.

Complaint for land. Before Judge James B. Park. Baldwin superior court. May 6, 1911.

This suit was brought in the statutory form, by Mrs. Laura A. Little and Miss Mary Lizzie Williams against Mrs. Isabella R. Napier, for the recovery of a certain tract of land, together with mesne profits, in Baldwin county, containing 275 acres, more or less, and described in the petition as follows: "bounded by lands of the said Mrs. I. R. Napier, known as the 'Picket field,' by lands of James Dismukes, by lands belonging to the estate of Mrs. L. V. Farrar, and by lands of Samuel Evans estate—said tract of land is a part of what constituted the John Williams estate and is known as the 'Chicken House field.'" The plaintiffs were granddaughters of John Williams Sr., and claimed title to the above-described land under the 6th item of the will of their said grandfather, which was as follows (omitting the personal property devised): "Also the lands adjoining the lands willed to G. T. Dismukes and Mrs. Napier, and the lands of J. H. Lawrence to the public road from Eatonton to Clinton, and the lands given to their mother, Mrs. Martha M. Williams; of the above lands given to said children, which contains five hundred (500) acres more or less, I allow my grandson, John S. Williams, and his wife, Essie Williams, to use the Clayton field and Sprout Spring field, said to contain 225 acres, for a support during the life of my wife, Frances Amanda Williams; at her death then to go in the possession of the said grandchildren, Laura Amanda and Mary Lizzie Williams. I give said lands as willed, with all the rights, members, and privileges in any wise appertaining or belonging, forever." The defendant in her answer contended, that she was not in possession of any lands belonging to the plaintiffs in the case; that the description of the lands sued for, as contained in the petition, did not in any wise fit the description of the real estate she is in possession of and that belonged to her father's estate, and she was unable to decide whether the plaintiffs intended to allege that the land she is

in possession of is that sought to be described by them; but she admitted that she was in possession of a tract of land that belonged to her deceased father and which was by him devised to her. She claimed title to this land under the 5th item of the will of her father; John Williams Sr., and averred that the plaintiffs were not entitled to recover said land or the mesne profits thereof. The 5th item of said will reads as follows: "I give, bequeath, and devise to my daughter, Mrs. Isabella Rountree Napier, all the lands situated and lying in Baldwin county, Ga., adjoining the lands of Dr. Snead, the lands willed to G. T. Dismukes, and the lands of J. H. Lawrence, up the branch to where one hundred acres was surveyed off, said to contain (350) three hundred and fifty acres more or less, with (160) acres one hundred and sixty acres of land also lying in Gilmer county, Ga. She is to have said lands, with all the rights, members, and privileges to said lands in any wise appertaining or belonging, forever." Before the trial, the defendant amended her plea, and alleged, that in a bill filed in Jones superior court at the October term, 1900, in the case of L. H. Andrews, administrator of the estate of John Williams Sr., *v.* John S. Williams et al., which was a bill for direction, etc., the terms and provisions of the will of John Williams Sr. were fully adjudicated by the court, and that all the parties thereto were estopped by the decree rendered in said case, and that under said decree the defendant was entitled to all the land in Baldwin county devised to her under the will of said John Williams, deceased, etc. The decree referred to in the defendant's answer is as follows, so far as relates to Mrs. I. R. Napier, Mrs. Laura Amanda Williams, and Miss Mary Lizzie Williams, to wit: "(2) That Mrs. Isabella R. Napier takes under the will, and that the lands described in item 5th of said will do vest in her, the said I. R. Napier, subject only to the debts of the estate, in the event all the other property of said estate shall be insufficient to pay said debts. . . (5) That Mrs. M. M. Williams, Laura Amanda Williams, and Mary Lizzie Williams and the other legatees and devisees take under the will, and that the title to the property, real and personal, to them bequeathed and devised, vest in them subject to the debts of the estate." The defendant also set up a prescriptive title to the above lands, contending that under the above decree (subdivision 2) she went into possession of said lands in dispute, and has since

been in the open, notorious, adverse, exclusive, and uninterrupted possession of said land for over 7 years. Upon the evidence submitted and the charge of the court, the jury found the premises in dispute for the plaintiffs, with mesne profits, and judgment was entered accordingly. The defendant made a motion for a new trial, on the various grounds therein stated, which motion was overruled by the court, and she excepted.

*Allen & Pottle,* for plaintiff in error.

*Johnson & Johnson, E. T. Dumas,* and *Hines & Vinson,* contra.

HILL, J. (After stating the foregoing facts.)

1. The decision of this case rests largely upon the proper construction of the testator's will. The plaintiffs and the defendant both claim title to the land sued for under a common source—the will of John Williams Sr. Mrs. Napier, his daughter, claims under item 5 of said will, and Mrs. Little and Miss Williams, his granddaughters, under item 6. As item 4 has some bearing upon the case, we give here each of these items. "4th Item. I give, bequeath, and devise to my stepson, G. T. Dismukes, (125) one hundred and twenty-five acres of land situated and lying in Baldwin county, adjoining Dr. Snead and Mrs. Farrar, with all the rights, members, and privileges to said land in any wise appertaining or belonging, forever. 5th Item. I give, bequeath, and devise to my daughter, Mrs. Isabella Rountree Napier, all the lands situated and lying in Baldwin county, Ga., adjoining the lands of Dr. Snead, the lands willed to G. T. Dismukes, and the lands of J. H. Lawrence, up the branch to where one hundred acres was surveyed off, said to contain (350) three hundred and fifty acres more or less, with (160) acres one hundred and sixty acres of land also lying in Gilmer county, Ga. She is to have said lands, with all the rights, members, and privileges to said lands in any wise appertaining or belonging, forever. 6th Item. I give, bequeath, and devise to my granddaughters, Laura Amanda and Mary Lizzie Williams [here follows a bequest of personal property]; also the lands adjoining the lands willed to G. T. Dismukes and Mrs. Napier, and the lands of J. H. Lawrence to the public road from Eatonton to Clinton, and the lands given to their mother, Mrs. Martha M. Williams; of the above lands given to said children, which contains (500) five hundred acres more or less, I allow my grandson, John S. Williams, and his wife, Essie Williams, to use the Clayton field

and Sprout Spring field, said to contain (225) two hundred and twenty-five acres, for a support during her life to my wife, Frances Amanda Williams; at her death then to go in the possession of the said grandchildren, Laura Amanda and Mary Lizzie Williams. I give said lands as willed, with all the rights, members, and privileges in any wise appertaining or belonging, forever." It is insisted by the plaintiff in error that the language in the 5th item, devising "all the lands situated and lying in Baldwin county, Ga., adjoining the lands of Dr. Snead, the lands willed to G. T. Dismukes, and the lands of J. H. Lawrence, up the branch to where one hundred acres was surveyed off, said to contain (350) three hundred and fifty acres more or less," conveys all the land that testator had in Baldwin county to her, except that devised in the 4th item of said will to G. T. Dismukes. In support of this view, and on the theory that this clause of the will was ambiguous, the defendant offered, on the trial of the case in the court below, to show by the scrivener who wrote the will that it was the intention of the testator to devise to his daughter, Mrs. Napier, all the lands belonging to the testator in Baldwin county, except those devised to G. T. Dismukes. This the court declined to allow, and we think properly. Able counsel insisted that the witness should have been allowed to testify "by declaring what the intention of the testator was, and what his [the scrivener's] intention was," namely: that the testator intended by said devise to convey all his land in Baldwin county, except that devised to Dismukes, to his daughter, Mrs. Napier; and also what instructions were given by the testator to the scrivener at the time he drew the will of the testator as to the devise of the property to his daughter, Mrs. I. R. Napier.

The plaintiffs claimed a tract of land which extended from the line between Jones and Baldwin counties to the line of what was known as the Dismukes tract. The defendant contended that under the 6th item of the will the plaintiffs were not entitled to any land in Baldwin county. The 6th item of the will declares that the land devised to the testator's grandchildren is bounded by the lands given to Dismukes and Mrs. Napier. One leading question in the case is whether the description in the 6th item of the will calls for the land of Dismukes as one of its boundaries. The land given to Dismukes in the 4th item of the will was in Baldwin county and some distance from the Jones county line. If, there-

fore, the Dismukes land formed one boundary of the lands devised in the 6th item of the will, it was impossible for such lands to lie wholly in Jones county and not to extend into Baldwin county. It was contended that the will was so ambiguous that this could be shown by parol to be the fact. We hold, however, that upon the face of the will itself one of the boundaries of the lands devised to the testator's grandchildren was the land given to Dismukes, and another boundary was the land given to Mrs. Napier. We think, unequivocally, this was the meaning of the will. This being so, it follows that it was not competent to introduce parol testimony of the scrivener of the will to show that the testator instructed him to devise to the grandchildren lands lying only in Jones county. Still less would it be competent to permit him to testify in round terms what the testator meant and what he himself meant. To allow the scrivener to change the boundaries of the land devised, when they are patent upon the face of the will itself, would put it in the power of the scrivener to make the testator's will. If, then, this boundary is fixed, it is competent to adjust by parol testimony the description of the land to the boundary, or boundaries, but it is not competent to disprove by parol testimony the boundary, or boundaries, fixed by the will itself. See *Gillespie* v. *Schuman*, 62 *Ga.* 252, 257; Donehoo *v.* Johnson, 120 Ala. 438 (24 So. 888). The defendant insists that all of the land devised to the plaintiffs lies in Jones, and not in Baldwin county. But the language of the 6th item is "also the lands adjoining the lands willed to G. T. Dismukes and Mrs. Napier, and the lands of J. H. Lawrence to the public road from Eatonton to Clinton," etc. The land willed to G. T. Dismukes was in Baldwin, and not in Jones; and the Dismukes boundary could not touch the land devised to the plaintiffs, if it were all located in Jones county. It appears that the testator devised, by the 6th item of his will, to the plaintiffs the tract of land known as the "Clayton field," which the testimony shows included what was known as the "Sprout Spring field." This he sold before his death. If the insistence of the defendant is correct, the devise of lands to the plaintiffs under the will would fail in toto. This hardly seems consistent with the evident purpose and general scope of the will of the testator. He was providing by these items for his child and his grandchildren; and it would be unnatural indeed, after providing for the one, he did not provide for the

others also. We think he did; and a careful reading and study of the will and the testimony convinces us that the land in dispute was devised by the 6th item of the testator's will to his granddaughters, Mrs. Little and Miss Williams, the plaintiffs in this case. To allow the construction of the will contended for by the plaintiff in error would be to materially add to the amount of the land estimated by the testator as being devised to his daughter Mrs. Napier, and to materially decrease the amount which, according to his estimate, he devised to his granddaughters, Mrs. Little and Miss Williams;—in fact, there is testimony going to show that it would leave them without any land at all, the devise to them of other lands which are not in dispute having failed by reason of their disposition by the testator prior to his death. The jury trying the case found that the premises in dispute were devised by item 6 of the will to the plaintiffs; the presiding judge refused to disturb their verdict; and as we find no errors requiring a reversal, we think the judgment of the court below should be affirmed.

2. The defendant also relied upon prescriptive title to prevent a recovery of the land in dispute; she averred, that she had been in possession of the same under color of title for over 7 years; that under a decree rendered in Jones superior court at the October term, 1900, to which both of the plaintiffs and the defendant were parties, she was put in possession of the lands, and had continued in possession of them until this suit was brought. The record discloses that said decree provided " that Mrs. Isabella R. Napier takes under the will, and that the lands described in item 5 of said will do vest in her, the said I. R. Napier." So that it appears from the language of the decree that it describes the land in dispute no more accurately than the will itself. We do not think that it describes it at all. For color to be the basis of prescription, the instrument by which it is asserted must purport to cover the land in dispute.. Powell on Actions for Land, § 295, p. 382, and authorities cited in note 4. The decree, in order to be a color for prescription to run, must on its face cover a description of the property in dispute. But the land is not so described either in that part of the decree or that item of the will under which the defendant asserts color of title.

In this connection, we consider also the ground of the motion for a new trial complaining that the trial judge committed error in

charging the jury that "if you believe from the testimony in this case, and all these are questions of fact for you to pass upon, that this action was commenced by these plaintiffs at any time within the statute after the youngest became of age, they would not be barred." We think this charge of the court was error, and that the reverse of the rule charged is the law. The statute began to run against each of the plaintiffs, respectively, at the time she became of age, and the one whose right of action had become barred, had it been barred, could not avail herself of the rights of the other against whom the statute had not operated a sufficient length of time to become a bar. The action, being a joint one, was not maintainable as such where the defendant showed a prescriptive title against one of the plaintiffs. Powell on Actions for Land, § 29; *Williamson* v. *Youmans,* 136 *Ga.* 222 (71 S. E. 138). While the charge referred to would have been reversible error had it appeared that there was a sufficient foundation for the prescriptive title asserted by the defendant, it could not harm her under the facts of this case, for the reason that she did not show any color of title which could be the basis of prescription so as to put the statute in operation against either of the plaintiffs.

3. Another ground of the motion for a new trial was the admission in evidence of a certain plat or drawing of the premises in dispute and other property owned by the testator at the time of his death, made by H. P. Cowan, a surveyor, which was objected to on the grounds, that it was a private drawing, not made according to the provisions of law; and that, with the entries thereon, it contained an expression of opinion as to what constituted the premises in dispute and other parcels of land, etc. This plat was not offered under the rule of court requiring certain surveys to be made under order of court on notice, and which would import verity on its face, but was a plat or drawing made by a surveyor, and was accompanied by other testimony showing its correctness; and was allowed by the court, we take it, for the purpose of illustrating the other testimony in the case and throwing light on the location of the land in dispute. We do not think the court erred in so doing. *Georgia Railroad Co.* v. *City of Atlanta,* 134 *Ga.* 871 (68 S. E. 703). Especially, as the court instructed the jury to entirely disregard all statements on this plat, if any, as to what land was left to either party in the case, or the processioners' line appear-

ing thereon, and that they were to consider from all of the testimony in the case whether the map was correct or not. The map of a county surveyor, while not evidence, under the circumstances of this case is admissible to go to the jury as a mere diagram to illustrate other testimony in the case. See *Brantly* v. *Huff*, 62 *Ga.* 532 (1), 534. There were no errors in the other grounds of the motion which require a new trial in this case, and the evidence was sufficient to support the verdict.

*Judgment affirmed. All the Justices concur, except Beck, J., absent.*