26957. SOUTHERN RAILWAY CO. *v.* LEONARD.

DECIDED OCTOBER 31, 1938.

*R. M. Arnold,* for plaintiff in error.   *W. A. Leonard,* contra.

SUTTON, J.   The plaintiff recognizes that it is a settled principle of law that the first grant of a new trial will not be disturbed unless it is made to appear that the verdict was the only one that legally could have been rendered under the law and the facts.   It is insisted that a verdict for the plaintiff was demanded, and in the bill of exceptions assigning error on the judgment granting a new trial several grounds are set forth as a basis for the contention that the court erred; but before determining whether or not

any of these grounds is meritorious, it is desirable to set forth substantially the evidence which was adduced on the trial of the case. It appears that under a general plan devised by the City of Columbus, acting through its city commission, to improve Sixth Avenue in the city, the defendant railway was required to relocate at its own expense a certain track which ran along the center of the avenue. This avenue, running north and south between Eighth and Fourth Streets, had no well-defined lines except the lines between the street and private property on each side. The section of Sixth Avenue where the track was relocated was 132 feet wide, but without sidewalk lines or curb lines, being a plain dirt street in a state of disrepair and poor drainage. In this section the track of the defendant lay east of the center line of the avenue and extended from a point north of Eighth Street to a point south of Fifth Street, and between Eighth and Seventh Streets there was a driveway on each side of the track. These driveways were not definitely laid out, but were originally dirt roads in a state of disrepair. This particular section of the avenue had become one of the main arteries of traffic, on account of the industries located on each side thereof, and for the further reason that it was one of the main approaches to a white cemetery, a colored cemetery, the municipal airport, the municipal golf course, the memorial stadium, municipal fair-grounds, baseball park, and municipal playgrounds. The owners of industries in that section and various organizations complained to the city as to the condition then existing, and requested that the section be improved. The city acquiesced in the suggestions, and devised a plan for the improvement of Sixth Avenue. The plan contemplated a driveway forty feet wide in the center of the avenue, and a parkway forty-six feet wide on each side, curbs and gutters to be constructed, and the driveway itself to be of gravel construction. The county of Muscogee annually appropriated a large amount of money for improvement of the streets in the city, and upon request of the city authorities agreed to do, at its own expense, all the work of grading, curbing, guttering, and of constructing the center driveway with a gravel base. No assessment was to be made against the abutting-property owners, because of which no formal ordinance or resolution was adopted by the municipal authorities, it being the customary practice not to do so with respect to work of this kind done by the county when

no part of the cost was to be assessed against the abutting-property owners. The county, however, by proper resolution authorized the doing of the work by its forces. Pursuant to the plan for improvement of this section of Sixth Avenue a working blueprint was prepared by the city engineer. The city manager, whose duty it was to see that the general plan was properly carried out, notified the defendant by letter, addressed to its assistant superintendent at Columbus, to relocate its track on Sixth Avenue in accordance with the blueprint, a copy of which was enclosed with the letter. Subsequently the section in question was improved in accordance with said general plan, and the track was relocated by the defendant at its own expense.

These facts as to the work to be done, participation therein by the county, and the enforced relocation of the track by the defendant, appear from the testimony of the city manager, city engineer, city attorney, county commissioners, clerk of the county commissioners, and copy of letter to the defendant in reference to relocating the track on Sixth Avenue. The evidence further showed that the work was properly done by the defendant, its work being completed on April 5, 1933. There was some evidence that the vibration of trains over the relocated track caused some of the window-panes and some of the plastering in the tenant-houses located on the abutting property to crack and fall; but there was no evidence that the trains were operated unlawfully or negligently in any respect. It appears that the section of the track in front of the plaintiff's property was, in its original location, approximately fifty feet from the property at its farthest point and approximately forty feet therefrom at its nearest point, and that after the relocation the track ran substantially parallel with the line of plaintiff's property at a distance of approximately twenty-seven feet therefrom, having run theretofore slightly northwest and southeast. The city manager testified that the space usually allotted for sidewalk purposes varied from four to ten feet, but that the sidewalks on Sixth Avenue, between Eighth and Fourth Streets, were not paved and not even definitely defined. It therefore appears that the track as relocated was not placed against the sidewalk, as was alleged in plaintiff's petition; and this fact is shown by documentary evidence introduced on the trial of the case. There was testimony by two or three tenants of the property that before the

track was moved they did not have to cross it to get into Sixth Avenue, but since its relocation they have had to do so. Before the relocation of the track there were two "roads" or travel sections in Sixth Avenue, the track running between the two. It appears from the evidence, however, that under the plan of improvement of Sixth Avenue, with only one travel section and that being in the center of the avenue with a park on each side of the travel section, it would have been necessary, under the plan devised by the city, for the tenants to cross the track to reach the travel section, even if the track had not been relocated. One tenant testified that smoke and cinders from the passing trains ruined her clothes when she washed them, and that sometimes she had to take them down and wash them again; that repairs had been made on the house; that the work consisted of fixing the plaster and the window-panes; and that since 1929 the plastering had never been repaired, except that it was whitewashed because it was smoked so badly. Another tenant testified that after the relocation of the track the noise was worse when the trains came by. Another tenant testified that since the track has been moved nearer to her sidewalk the situation is more dangerous to her small children who play on the sidewalk, and that the only warning that the trains give in passing is the ringing of the bell.

The present action, properly construed, is one wherein the plaintiff sought to recover for damages to his property resulting from the relocation of the defendant's railway-track. It is not alleged in the petition and the proof does not show that after the relocation of the track it was maintained in an unlawful or negligent manner. The right to recover, if any, was predicated on the constitutional provision (Code, § 2-301) that "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid." To entitle the plaintiff to recover, the damage alleged to have been sustained must have been special, and not participated in by the general public, and the sole measure of the damage is the difference between the market value of the property before the track was relocated and the value thereof after the track was relocated. Evidence as to vibration of the trains, noise, smoke, cinders, and sparks from passing trains, as a result of relocating the track, causing physical damage to abutting property, would be illustrative of the diminution of the market

value of the property; but no recovery could be had therefor as independent elements of damage. Similarly as to increased fire hazard, greater danger of being struck by the passing trains, and ingress and egress being interfered with or made more difficult. Fanciful or speculative damages or sentimental injuries are not elements to be considered as damage to the freehold. Neither are results amounting only to inconvenience or discomfort elements of damage in computing to what extent the value of the property has been reduced. Diminished rental value for any purpose is no basis for compensation, except as to its result, if any, on the general value. These principles are to be gathered in the aggregate from *South Carolina R. Co.* v. *Steiner,* 44 *Ga.* 546 (3) ; *Campbell* v. *Metropolitan Street Railroad Co.,* 82 *Ga.* 320 (9 S. E. 1078) ; *Peel* v. *Atlanta,* 85 *Ga.* 138, 140 (11 S. E. 582, 8 L. R. A. 787) ; *Streyer* v. *Georgia Southern Railroad Co.,* 90 *Ga.* 56 (15 S. E. 687) ; *Pause* v. *Atlanta,* 98 *Ga.* 92, 100 (26 S. E. 489, 58 Am. St. R. 290) ; *Austin* v. *Augusta Terminal Ry. Co.,* 108 *Ga.* 671 (34 S. E. 852, 47 L. R. A. 755) ; *Atlantic Railway Co.* v. *McKnight,* 125 *Ga.* 328 (54 S. E. 148) ; *Towaliga Falls Power Co.* v. *Sims,* 6 *Ga. App.* 749, 754 (65 S. E. 844) ; *Sheppard* v. *Georgia Railway & Power Co.,* 31 *Ga. App.* 653 (121 S. E. 868). "While the plaintiff is entitled to recover only the diminution in the market value of the property and may not recover for any decrease in the rentals, the difference in the rental value of the property before the improvements were begun and after they were completed might be set up as a circumstance tending itself to show a diminution in the value of the property, or to corroborate other evidence to that effect." *City of Atlanta* v. *Atlas Realty Co.,* 17 *Ga. App.* 426 (2-b) (87 S. E. 698) ; *City of Atlanta* v. *Gore,* 47 *Ga. App.* 70 (5) (169 S. E. 776). The whole damage to the property, past, present, and future, must be assessed in one action, the action taking the place of the statutory provision in cases where property is condemned. *Sheppard* v. *Georgia Railway &c. Co.,* supra. Where actual damage results to abutting property and is compensable under the constitutional provision, an action to recover such damage must be brought within four years from the date the right of action accrues. Code, § 3-1001; *Smith* v. *Central of Georgia Ry. Co.,* 22 *Ga. App.* 572 (96 S. E. 570) ; *Sheppard* v. *Georgia Railway &c. Co.,* supra; *Atkinson* v. *Atlanta,* 81 *Ga.* 625 (7 S. E. 692).

The evidence shows that the work of relocating the track was completed on April 5, 1933, and that the present suit was not filed until April 21, 1937. Consequently, under the plea of the defendant, a finding was demanded as a matter of law that more than four years had elapsed since the right of action, if any, accrued, and that the present action was barred by the statute of limitations.

The plaintiff contends, however, that he is entitled to recover as for a continuing nuisance. Under the allegations of the petition and the evidence, we do not think that a nuisance was shown. "A nuisance is anything that works hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man." Code, § 72-101; *Sheppard* v. *Georgia Railway &c. Co.,* supra. "The expression 'may otherwise be lawful' shows that the act complained of, in so far as it causes 'hurt, inconvenience, or damage to another' must be unlawful, that is, a violation of some right of plaintiff, to constitute a nuisance." *Simpson* v. *DuPont Powder Co.,* 143 *Ga.* 465, 466 (85 S. E. 344, L. R. A. 1915E, 430). "That which the law authorizes to be done, if done as the law authorizes it to be done, can not be a nuisance." *Burrus* v. *Columbus,* 105 *Ga.* 42, 46 (31 S. E. 124); *Bacon* v. *Walker,* 77 *Ga.* 336. Where the act "itself is legal, it only becomes a nuisance when conducted in an *illegal* manner, to the hurt, inconvenience, or damage of another." *City of Quitman* v. *Underwood,* 148 *Ga.* 152 (96 S. E. 178); *Simpson* v. *DuPont Powder Co.,* supra.

If there was no original nuisance, there could be no continuing nuisance. *Atkinson* v. *Atlanta,* and *Sheppard* v. *Georgia Railway &c. Co.,* supra. Under the above authorities, if the relocation of the defendant's track was done under lawful authority, the act would not constitute a nuisance. If the track was relocated in a proper manner and was maintained in a proper manner, there was no nuisance. Tracks are laid down for the purpose of operating trains thereon. If the trains are operated in a proper manner, such operation does not constitute a nuisance. Necessarily the running of trains makes some noise and produces some vibrations. Locomotives pulling trains emit some smoke, sparks, and cinders; but these incidental results do not necessarily constitute a nuisance,

but are the necessary incidents of the franchise granted a railroad company in connection with the conduct of its business. *Georgia Railroad & Banking Co.* v. *Maddox,* 116 *Ga.* 64 (4) (42 S. E. 315). Of course, if the relocation be done in an improper manner or subsequently maintained in a negligent manner, if trains are operated over tracks in a public street in an unlawful or improper manner, creating more noise and vibrations and emitting more sparks, cinders, and smoke than necessary, a nuisance might arise.

The defendant was authorized, under the Code, § 94-301, to reconstruct or to relocate its track, but the written consent of the municipality in which the relocation takes place must be obtained in such a case. *L. & N. Railroad Co.* v. *Merchants &c. Bank,* 166 *Ga.* 310 (143 S. E. 506). The proof shows that the defendant was not interested in relocating its track, but was instructed to do so by the city manager of the municipality of Columbus, pursuant to orders of the city commission, its governing body, to carry out a general plan devised by the city for improving the avenue on which the property in question abutted. The City of Columbus, under its charter powers, has full control over its streets and very full general police powers. Ga. L. 1921, pp. 800, 805, 806, 809, sec. 3, pars. 9, 10-b, 20, 21. "A regulation by a city, requiring a commercial steam-railroad company to change the location of its tracks in a street, is a legitimate exercise of municipal police power, when such regulation is reasonable and promotive of the general welfare and convenience of the city and its inhabitants." *Atlantic & Birmingham Railway Co.* v. *Cordele,* 128 *Ga.* 293 (3) (57 S. E. 493). The proof shows that Sixth Avenue between Eighth and Fourth Streets in Columbus had no well-defined lines, except those between the street and private property on each side; that the section where the track was relocated was 132 feet wide and had no sidewalk lines or curb lines, being a plain dirt street in a state of disrepair and poor drainage; that in this section the track of the defendant lay east of the center line of the avenue, and extended from a point north of Eighth Street to a point south of Fifth Street; that in this section of Sixth Avenue between Eighth and Seventh Streets there was a driveway on each side of the track, not definitely laid out, but ordinary dirt roads in a state of disrepair; that this section had become one of the main arteries of traffic,

on account of the industries located on each side thereof, and because it was one of the main approaches to many frequented spots; and that various industries and organizations complained to the city authorities as to the condition then existing, requesting the improvement and beautification of the avenue. With the co-operation of the county the city undertook the work, including in its plan the relocation of the defendant's track, the work of relocation to be done according to a blueprint prepared by its city engineer, a copy of which was sent with the notice to the defendant to relocate its track. The evidence showed that the work of the defendant was properly done; and there was no evidence that after the relocation it was maintained, or the trains operated, in a negligent or unlawful manner. The proof shows that there was no original nuisance, and consequently there could be no continuing nuisance. Nothing done by the defendant in maintaining the relocation of the track or in running its train thereon is alleged or proved to have been anything more than the necessary incidents of the operation of its franchise in a lawful and non-negligent manner.

There is yet another reason why a verdict in favor of the defendant was demanded. It is shown that at the time the right of action, if any, accrued, the title to the property here involved was not in the plaintiff. A. L. Leonard acquired title to the property under date of April 15, 1920, by a warranty deed from Mrs. Fannie Lafkowitz. On December 13, 1935, he conveyed title to A. L. Leonard, as trustee for A. L. Leonard Jr., the present plaintiff. The work of relocating the defendant's track is shown to have been completed on April 5, 1933. At that time the right of action, if any, accrued, and accrued only in favor of the then owner of the property, A. L. Leonard. An action for damage to realty does not run with the land, and can not be brought by a subsequent purchaser. *McLendon* v. *Atlanta & West Point R. Co.*, 54 *Ga.* 293; *Allen* v. *Macon & Dublin R. Co.*, 107 *Ga.* 838, 841 (33 S. E. 696); *Green* v. *South Bound Railroad Co.*, 112 *Ga.* 849 (38 S. E. 81). The defendant in error cites authority to the effect that "Where a person purchases land adajacent to a nuisance already created, and improves such property by erecting dwellings thereon and rents the same to tenants who are injured by reason of such nuisance, this will not prevent such person from making complaint and having such nuisance enjoined and abated, in a proper case

made." *Town of Rentz* v. *Roach,* 154 *Ga.* 491 (4) (115 S. E. 94). However, as pointed out in the foregoing part of the opinion, neither the pleading nor the evidence shows that a nuisance was created or maintained in connection with the relocation of the track of the defendant; and the cited case does not require any ruling different from that we have made in this respect.

The first grant of a new trial to the plaintiff will not be disturbed unless a verdict for the defendant was demanded as a matter of law. A consideration of the grounds of the plaintiff's motion for new trial becomes necessary, because if in any of the grounds error is shown as to the admission of the evidence from which the conclusion is to be drawn that a verdict in favor of the defendant was demanded as a matter of law, it could not be said that the court abused its discretion in the first grant of a new trial. The general grounds of the motion for new trial are, for the reasons shown in the foregoing part of this opinion, without merit.

The first special ground complains that the court erred in admitting testimony of the city manager as to the general plan of the city to improve the section of Sixth Avenue, the condition of the avenue, requests of nearby industries and interested civic organizations that the improvements be made, it being contended that the testimony was prejudicial to the plaintiff in that it gave the jury the impression that the defendant was obliged to do what the city instructed it to do, and that it could not be subjected to a claim for damages to the abutting property. The jury could not be said to have been prejudiced by the testimony, because the requirement was a legitimate exercise of the city's powers granted by the legislature. The evidence was admissible to show that the railroad acted under compulsion, and not for its own benefit, and that it did that which the law required it to do, and did not create a nuisance. Furthermore, the testimony, even if inadmissible, was harmless to the plaintiff, because, as hereinbefore shown, the right to bring the action, if any, was not in the plaintiff, inasmuch as he did not have title to the property at the time the right of action, if any, accrued.

The second special ground complains that the court erred in admitting testimony of a county commissioner as to the county's participation in the work of improvement, the conditions that existed, and the importunities of nearby industries and of various civic or-

ganizations that the section be improved; it being contended that the naming of the organization prejudiced the jury as to the amount of damages that might be caused to abutting-property owners. It was proper for the defendant to show that the requirement of relocating the track was in pursuance of a general plan to promote the general welfare of the city through the improvement of one of its streets, and that the need of such improvement was shown by the importunities of various industries and civic organizations. Having a right to show the need of improvement in such manner, the evidence could not be legally withheld on any theory that the naming of such organizations might depress the amount of damages that might be caused abutting-property owners. Furthermore, if it could be said that the evidence was inadmissible, the plaintiff was not harmed, because the evidence otherwise showed that the right to bring the action, if any, was not in the plaintiff.

The third special ground complains of the admission in evidence of a warranty deed from Mrs. Fannie Lafkowitz to A. L. Leonard, under date of April 15, 1920, conveying the property alleged to have been damaged; it being contended that it was prejudicial to the jury, in that the date of the purchase by A. L. Leonard and the amount paid by him were immaterial. The deed was admissible to show title in A. L. Leonard in 1920, in connection with his statement that he had owned the property and had not parted with the title until he conveyed the property to himself as trustee for his son, A. L. Leonard Jr., which was on December 13, 1935, after the date the right of action, if any, accrued for damage to the abutting property here involved.

Ground 4 complains that the court erred in admitting testimony of a clerk of the county commissioners, as to the work done by the county on Sixth Avenue; it being contended that it was prejudicial to the jury, because it only showed the improvement made by the "city," and did not throw any light on the relocation of the track, and that the benefits pointed out by the witness prejudiced the jury as to the damage done by the relocation of the track. The evidence was admissible to show that the county did the work necessary, under the general plan, to put the street in condition after the relocation of the track of the defendant, and that such work was not a part of that to be done by the defendant in relocating its track and which was completed on April 5, 1933.

The fact that the evidence showed benefits under the general plan of improvement did not make it inadmissible on the theory that it minimized the alleged damage by reason of the relocation. Furthermore, if it could be said that the evidence was inadmissible, the plaintiff was not harmed, because other evidence showed that the right to bring the action, if any, was not in the plaintiff.

Ground 5 complains of the admission in evidence of a time-book containing entries made by the track foreman in charge of the relocation of the track, showing the total number of hours of labor devoted to the work; it being contended that it was irrelevant, incompetent, and immaterial, in that it did not show when the whole transaction was completed. This record of original entries was admissible in evidence as corroborative of the track foreman's testimony that the labor there recorded, for April 3, 4, and 5, 1933, was done in relocating the track of the defendant; and while it did not show the completing of the work, it was supplemented by the track foreman's testimony that the last hours of labor, on April 5, 1933, completed the relocation of the track, and the time-table was admissible in connection with his testimony.

While ordinarily the first grant of a new trial to a plaintiff will not be disturbed, it is subject to the condition that under the law and the evidence a verdict in favor of the defendant was not demanded; and as in the present instance it clearly appears that in no ground of the motion for new trial is any error shown as to the admission of the evidence from which the conclusion must be drawn, as pointed out in the foregoing part of this opinion, that a verdict in favor of the defendant was demanded, it necessarily follows that the court abused its discretion in granting a new trial and that the judgment must be reversed.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*