37483. TIFT *v.* STATE HIGHWAY DEPARTMENT.

DECIDED MARCH 20, 1959—REHEARING DENIED APRIL 2, 1959.

388

*Seymour S. Owens, J. C. McDonald,* for plaintiff in error.

*Eugene Cook, Attorney-General, Paul Miller, Assistant Attorney-General, John L. Jernigan, Deputy Assistant Attorney-General, Maxwell A. Hines,* contra.

FELTON, Chief Judge. 1. The court did not err in overruling the general grounds of the motion for new trial. The amounts found by the jury to cover the value of the land actually taken and the consequential damages to the adjoining lands not taken were within the range of the evidence.

2. Special ground 4 is without merit. The complaint in this ground was the refusal of the court to permit the witness J. M. Keaton, Jr., a witness for the condemnor, to answer the following question: "How much water in your opinion will be conducted down there by that pipe . . . ?" The condemnor's objection to the question was that it called for a guess on the part of the witness, because he had no facts showing the amount of rainfall, the size of the area being drained, as all the facts should be taken into consideration to show the amount of water that would be drained down the pipe. The attorney for the movant with permission of the court stated to the court that he expected the witness to testify as to the amount of water drained during a month, a week, or a certain period of time which would be conducted into that area, and stated that the witness was the engineer in charge of the project and that he installed the 36-inch pipe through which the water, which was the subject of discussion, ran. Movant contended in this ground that the water which would flow through the pipe during a certain period of

time would be relevant on the question of consequential damages, and a failure to permit the question to be asked was a restriction on the right of movant's privilege of cross-examination.

It was not error for the court to refuse to permit the question and answer. In the first place the question could not be intelligently answered, because no period of time was stated with reference to the water which would flow through the pipe. The evidence shows that the witness did not determine the size of the pipe which should be installed and that his opinion was not requested on the subject. This ground of the motion does not show that the court refused to permit the witness to give his opinion as to what amount of water would flow through the pipe during any definite period of time and under definite circumstances or that movant was restricted in any way from obtaining the opinion of the witness as to whether the construction of so much of the project that necessitated the installation of the pipe would result in overflowing the remaining lands of the condemnee.

3. In special ground 5 movant complains that the court excluded the testimony of J. M. Keaton, Jr., a witness for the condemnor, with reference to the cost to the condemnee of building a road 60 feet wide, 2000 feet long with a 20-foot strip of asphalt in order to overcome the hazardous approach to the remaining lands of the condemnee caused by the taking of the other property of the condemnee. The objection to the question by the condemnor was that it was irrelevant and immaterial because there was no evidence to show how the condemnee would place it, no evidence to show the grade, what amount of dirt would be removed from the right-of-way or how much would be put in, that there was no evidence to show the type of soil, all of which things would enter into the building of the road. The Court did not err in excluding this question and in refusing to permit it to be answered. The court did not err for the reason that there was no evidence that the condemnee would build a road of some kind in order to correct the hazardous approach to his other land; there was no evidence that the particular road described in the question was justified or reasonable in the circumstances and we think that the question of the necessity and reasonableness of the road was so problematical that the answer

to the question would have been prejudicial to the condemnor and, since there was no assurance that the condemnee would build such a road, the answer might have resulted in the jury's awarding the condemnee an amount to cover the damage to the adjoining property without such a road and add to that award the amount of the cost of the road.

4. Special ground 6 complains of the ruling out of a similar question and is covered by the reasoning in the foregoing division.

5. Special ground 7 complains that the court would not permit Hugh F. Gibson, a witness for the condemnor, to answer the question whether an engineer by the name of Mr. Woellert, in showing the premises to the witness, had told the witness that there had been fences taken down off the property. The objection to the question was that the answer would be hearsay. The court did not err in sustaining the objection to the question. What Mr. Woellert told Mr. Gibson would be hearsay, and it does not appear that Mr. Woellert was the agent or representative of the condemnor so as to bind the condemnor in any way in the premises. The question could easily have been asked the witness whether he considered the fact that the fences had been taken down in his judgment as to the value of the land. The witness testified that Mr. Woellert did not mention to him 329 pecan trees and the witness stated that he had considered them and put down their value to consider in his estimate. All the condemnee had to do, in order to test the validity of the witness's estimate, was to ask whether he included the fences which might have been taken down.

6. Special ground 8 contains an assignment of error basically the same as made in special ground 7 except that it relates to what Mr. Woellert told Mr. Gibson about the improvements on the land actually taken. There is no merit in special ground 8.

7. Special ground 9 complains of the failure to permit Hugh F. Gibson, a witness for the condemnor, to answer the following question: "So there would not have been a tremendous expense in preparing that land for filling stations, and things like that because it was even with the 41 Highway?" There was no error in ruling out the question and answer for the reason that the question was too indefinite to be susceptible of an intelligent

answer. The jury viewed the premises in this case, and even if the judge's ruling could be called dobutful in the slightest, we think that, under the circumstances, the judge did not abuse his discretion in disallowing the answer.

8. Special ground 10 complains that J. H. Wideman, a witness for the condemnor, was permitted to state that certain dwelling houses and tobacco barn had been moved from the land taken in this proceeding onto the adjoining lands of the condemnee. The objection to this testimony was that it was prejudicial to the condemnee for the reason that it possibly led the jury to believe that these houses had been moved off the right-of-way condemned and onto other lands of the condemnee and as a result the condemnor was not liable to pay the condemnee the fair market value of such houses since they were still on land belonging to the condemnee. We think that this testimony was admissible as a circumstance in the ascertainment of the value of the lands taken. It is presumed that the court correctly charged the jury on the measure of damages in the case in the absence of any exception to the charge and, since the jury viewed the premises, we do not believe that the testimony could have been harmful to the condemnee's rights.

9. Special ground 11 complains of the failure of the court to permit J. H. Wideman, a witness for the condemnor, to answer the question whether he saw the avenues which had been opened up to the land actually taken. The witness answered, "I didn't see the names of them." The objection to the question was that the witness did not designate the avenues and the question was too indefinite for the witness to answer. The answer to this question was certainly not harmful, and since the jury viewed the premises, it does not seem to us that the court erred in ruling out the question. However, the witness did not answer the question asked and there was no effort on the part of the condemnee to repeat the question and there is no showing that the court at any time refused to permit the witness to testify definitely with reference to the avenues that he saw. This ground is without merit.

10. The complaint in special ground 12 is that the court did not permit J. H. Wideman, a witness for the condemnor,

to give his opinion as to the value of lots on the southern portion of the land taken. The objection to the question was that it was too indefinite for the witness to know what lots were involved and no time was specified at which the value sought would be applied. The court did not err in not permitting this question to be answered. It was entirely too indefinite for the witness to know what lots were intended.

11. Special ground 13 complains of the refusal by the court to allow C. E. Mathews, a witness for the condemnor, to answer a question, the substance of which will appear from the following: "Q. Suppose you drew the lots off 100 feet on the 41 Highway and run back east 200 feet beginning at the northeast corner of 20th Street and the 41 Highway and west north from there, you understand the question? A. Yes. Q. That is land they have actually taken shown here on this map designated as plaintiff's Exhibit No. 3 in green, brown and yellow, is it your testimony those lots would be worth about $1,000 a lot or $2,000 an acre, Mr. Mathews?" The objection was that the land was not condemned as lots, there being no plat on record so as to notify the Highway Department that it was a subdivision and that to permit the witness to be questioned about all of the lots which might be carved out of the area along the west boundary of Highway 41 would in effect be allowing the value of lots, whereas the Highway Department had condemned the property by tract and it in effect would be saying this was a subdivision, a plat of which had been duly recorded and that the aggregate value of a large number of lots would be inadmissible, irrelevant and prejudicial. There was a further objection to the question that it incorporated lands not being taken in the instant proceeding. The court did not err in sustaining the objection to the question for the reason that it is not shown that the lots were within the bounds of the land actually taken. *While the jury had a right to, and presumably did, consider the fact that the land taken was available for subdivision purposes,* it would have confused the issues in the case to permit a witness to testify to the value of the lands taken and those not taken without distinguishing between the two. The entire tract had not been subdivided into lots, the jury viewed the premises and

there was ample evidence from which the jury could find how much of the land actually taken could be utilized as subdivision lots, and we do not think the refusal to permit the answer to this question, under the circumstances in this case, was harmful to the condemnee and we do not think the judge abused his discretion.

12. The complaint in special ground 14 is that Rev. Banks Allen, a witness for the condemnor, was not permitted to answer the following question: "Preacher, what is the value of the property adjacent to this property condemned, Mr. Tift's property down there—what is the value of a lot 100 by 200 feet down in that area?" The objections were that proper foundation had not been laid for such a question and that it was too indefinite in that it did not show the particular lot involved. Just before the witness was asked the question stated above the following questions and answers were given: "Q. Did you go back east on 20th Street? A. Yes. Q. There are some houses out there under construction now? A. Yes. Q. When were you out there last? A. Oh, a week or more before this. Q. Did you see those houses? A. Yes, sir, and I saw them before that. Q. You knew the lots for those houses were taken from this same tract? A. Yes." The court did not err in disallowing the question and answer for the reason that the question was too indefinite in its scope and was not limited to any specific territory as to the lands of the condemnee.

13. Special ground 15 complains of the refusal of the court to admit in evidence a subdivision plat of the land to be actually taken by this proceeding. One objection to the plat was that it purported to contain property which the condemnee did not own at the time of the institution of this proceeding and did not own at the time of the trial and did not own at the time the plat was made. It was developed by the testimony of this witness that the land involved in the plat had not been actually divided and marked off as a subdivision but the plat was a mere drawing of a subdivision and was not in truth a survey of the subdivision. This evidence was objectionable for that reason as well as for the reason that it contained lands not owned by the condemnee. While the jury could take into consideration the fact that the land taken was suitable for subdivision pur-

poses, it had not been actually subdivided and a plat so showing would have presented a picture to the jury which was not a truthful picture of the actual situation as it existed. The jury viewed the premises, knew the area and could well ascertain what the value of the land taken was for subdivision purposes. We do not think that the court erred in excluding the plat from evidence.

14. Special ground 16 is without merit for the reasons stated in division 3 treating the assignment of error in special ground 5. The question and objection and subject matter are practically the same.

15. Special ground 17 complains of the exclusion of the answer to the following question which was asked Mr. George J. Sumner, a witness for the condemnee: "Q. Mr. Sumner, what is the value of the present dam and pond located there, you say you have gone out there and gone over it? A. I would say to construct that dam would cost approximately $3,000." This ground does not show harmful error. It is not clear from the ground itself whether the condemnee could use the part of the dam which remained after the taking of the land involved here and, if a part of the dam could be used, it does not appear how much of it could be used so that the answer would not illustrate the value of the dam and pond as contemplated in the question. If none of the existing dam could be used, the cost of the construction of the dam would not be the measure of the value of the dam and pond as it existed. Last of all the answer was not responsive to the question asked. We say again that the jury viewed the entire premises and we conclude that it was not harmful error to rule out the above answer.

The court did not err in denying the motion for a new trial.

*Judgment affirmed. Gardner, P. J., Carlisle and Nichols, JJ., concur. Townsend and Quillian, JJ., dissent.*

QUILLIAN, Judge, dissenting. With the conclusion of the majority concerning ground 12 of the amended motion for new trial I cannot agree. I think the witness clearly identified the lots to which his testimony alluded as lots not taken but a part of the same tract of land and as being property which the condemnee contended had been damaged in consequence of that

taken. Evidence of the value of these lots at the time of trial was pertinent and material to the issue as to whether they had actually been damaged. While consequential damages to realty of the condemnee adjacent to that condemned theoretically accrue at the time of the taking, the existence and amount of such damages is shown by facts and conditions prevailing subsequent to the actual condemnation and events transpiring between that time and the time at which the condemnation case is tried. *Stansell & Rape Bros.* v. *City of McDonough,* 50 *Ga. App.* 234 (7b) (177 S. E. 749), and cases cited therein.

The value of the lands alleged to have been damaged, as of the time of the trial, is an evidentiary fact which is admissible, together with other evidence as to the value of such lands at the time of or before the taking, for the purpose of arriving at the true amount in which such lands have been damaged by the taking, although the damage itself must be fixed as of the time of taking. *Georgia S. & F. R. Co.* v. *Small,* 87 *Ga.* 355 (13 S. E. 515). The same rule of evidence would apply to consequential benefits, and the jury would then determine, from all the evidence, whether the adjacent lands were damaged or benefited by the taking, and, if they were damaged to a greater extent than they were benefited, the amount of such damage.

In *Southern Ry. Co.* v. *Leonard,* 58 *Ga. App.* 574, 581 (199 S. E. 433) it was held: " 'While the plaintiff is entitled to recover only the diminution in the market value of the property and may not recover for any decrease in the rentals, the difference in the rental value of the property before the improvements were begun and after they were completed might be set up as a circumstance tending itself to show a diminution in the value of the property, or to corroborate other evidence to that effect.' *City of Atlanta* v. *Atlas Realty Co.,* 17 *Ga. App.* 426 (2b) (87 S. E. 698); *City of Atlanta* v. *Gore,* 47 *Ga. App.* 70 (5) (169 S. E. 776)."

I dissent from the holding that the exclusion of the evidence contained in ground 13 of the amended motion for new trial was a correct ruling.

The familiar rule should be applied that evidence is admissible for the purpose " 'of illustrating the market value of the prop-

erty taken, and to assist the jury in arriving at the true market value of the property,' which 'is not its market value for any particular purpose, but its market value for any and all purposes,' and that 'in arriving at this general market value' the jury 'are authorized to consider its availability and adaptability and value for any particular purpose or use for which the evidence shows it might be used.'" *State Highway Board* v. *Shierling,* 51 *Ga. App.* 935 (2) (181 S. E. 885).

If the map which clearly showed the prospective use of lands as a subdivision be excluded merely because the tract had not then been divided into a subdivision the prospective value of the tract for that purpose could not be proved.

In the case of *Harrison* v. *Young,* 9 *Ga.* 359 (4) it was held: "The value of the land taken for public use, is not restricted to its agricultural or productive qualities, but inquiry may be made as to all other legitimate purposes to which the property could be appropriated." The *Harrison* case has been uniformly followed. *Georgia Power Co.* v. *Carson,* 46 *Ga. App.* 612 (4) (167 S. E. 902); *State Highway Board* v. *Coleman,* 78 *Ga. App.* 54, 55 (50 S. E. 2d 262).

If the range of evidence be so limited as to exclude from consideration the prospective value of the tract of land in question as a subdivision until it was actually laid off or used for that purpose, the rule pronounced in the *Harrison* case cannot be applied. Instead of the value of the property for any purpose, including any prospective use, the standard would be the value of the property for only the use to which it is presently put.

The fact that the plat showed other property than that owned by the condemnee did not render it inadmissible. In *Napier* v. *Little,* 137 *Ga.* 242 (3) (73 S. E. 3, 38 L.R.A. (NS) 91, Ann. Cas. 1913A 1013) it is held: "A map made by a surveyor, proved to be correct, of the premises sued for in an action for land, and of other tracts adjacent thereto, is admissible to go to the jury to illustrate other testimony in the case, and for the purpose of throwing light on the location of the land in controversy."

I am authorized to say that Judge Townsend concurs in this dissent.