69739. DEPARTMENT OF TRANSPORTATION
v. PILGRIM et al.
(333 SE2d 866)

BEASLEY, Judge.

This appeal resulted from a condemnation proceeding under OCGA § 32-3-4 et seq. brought by the Department of Transportation (DOT). The condemnees were five individual co-owners of the land in question and two banks, holders of security interests thereon; the latter are not concerned with this appeal.

In 1978 the individual condemnees purchased the somewhat triangular tract of land, consisting of approximately 30 acres situated at the intersection of Georgia Highway Spur 40 and the Colerain-St. Mary's Road. The property originally had 1,657 feet of frontage on Spur 40. The condemnees obtained a re-zoning to commercial, to a depth of 500 feet measured from Spur 40. The rest of the property remained zoned residential. In 1979 two parcels at the point of the triangle on Spur 40 were sold, leaving approximately 1,335 feet of commercial frontage.

In December 1982, DOT filed a declaration of taking of 624.85 (hereinafter 625) linear feet of access right-of-way along the Spur 40 frontage. DOT planned to convert Spur 40 to a limited access highway and to fence 625 feet of its right-of-way to prevent any access by the condemnees to Spur 40 from that portion of their land. Condemnees are left with all their land but only 710 feet of commercial frontage on Spur 40.

As the trial court charged, without challenge, the sole issue presented concerns consequential damages to the remainder of the property. The dispute concerns the scope of such damages, that is, whether to measure the damage to only that portion of the commercial property behind the planned fence, or to measure the damage to the entire commercial parcel, including the latter, of course, would include 710 linear feet of direct access to Spur 40. The former would have none. It would have access to Spur 40 only indirectly, through the unfenced portions of the land.

DOT estimated $29,200 as just and adequate compensation for the taking of the access rights and deposited that sum into court. The condemnees, dissatisfied, sought a jury trial on compensation. It returned a verdict of $110,800 and DOT appeals the resulting judgment. *Held*:

1. DOT asserts as error the failure to give certain requests to charge. However, DOT's amended notice of appeal directed the omission from the appellate record of both parties' requests to charge. Under *Brown v. Frachiseur*, 247 Ga. 463, 464 (277 SE2d 16) (1981), an appellate court is not required to prosecute an appeal on behalf of appellant by insuring that a sufficient record is available for determi-

nation of the issues. Nevertheless, we have obtained the requests to charge from the lower court. See OCGA § 5-6-48 (d). The reasons we do so here is because it may have been an inadvertent omission by the appellant, both parties argue the merits of at least some of the requests, and appellees do not dispute that the requests were in fact made.

(a) DOT presented no argument concerning enumerations of error 4, 5 and 7 (which deal with an alleged erroneous instruction and the failure to give written requests 9 and 14). They are deemed abandoned. Court of Appeals Rule 15 (c) (2); *Trowell v. Weston*, 154 Ga. App. 572 (2) (269 SE2d 74) (1980).

(b) Enumerations of error 8 and 9 complain of the failure to charge OCGA §§ 32-6-131 and 32-6-133.

There was no written requests to charge these code sections. *Slaughter v. Linder*, 122 Ga. App. 144 (2a) (176 SE2d 450) (1970); *Clounts v. Scholle*, 172 Ga. App. 721, 723 (3) (324 SE2d 496) (1984); OCGA § 5-5-24 (b).

(c) Enumeration of error 6 complains of the failure to give the second sentence of the following request to charge: "I charge you that the right of access to a public road is a property right which arises from the ownership of land contiguous to a public street, and the owner cannot be deprived of his right without just and adequate compensation first being paid. However, a property owner is not entitled as against the public to access to his land at all points in the boundary between the property and the street, if entire access has not been cut off, and if he is offered a convenient access to his property." Both sentences are quotes from cases: the first is found in *MARTA v. Datry*, 235 Ga. 568, 575 (220 SE2d 905) (1975); the second in *Brock v. Dept. of Transp.*, 151 Ga. App. 905 (1) (262 SE2d 156) (1979). Both were included in a charge which was approved in *Brock* where access rights were taken.

In *Panos v. Dept. of Transp.*, 162 Ga. App. 53, 56 (11) (290 SE2d 295) (1982), the second sentence was again approved as a correct statement of law to the jury and this court held the instruction "is applicable in cases where the property owner had utilized his entire street boundary as access prior to the taking."

Thus, we may conclude that the written request was pertinent and correct, but that does not end our consideration of this issue. "It is now well settled that, simply because a request to charge . . . is apt, correct and pertinent, it is not necessarily error to fail to charge it, but the test is whether the court substantially covered the principles embodied therein . . . or whether it was 'sufficiently or substantially covered by the general charge.'" *Seaboard Coast Line R. Co. v. Thomas*, 125 Ga. App. 716, 718 (1) (188 SE2d 891) (1972).

A careful review of the entire charge reveals that although many

applicable principles relative to access rights were charged, there was no reference to the proposition that the landowner was not entitled to access at all points along the boundary even though previously such access was available. In view of the way this case was presented whereby it was shown that access to a 7-acre portion of the whole tract was cut off, the failure to instruct the jury regarding this principle where the entire access was not cut off could only be harmful to condemnor's cause.

Therefore, it was error to fail to give the second sentence of the requested instruction and a new trial must be granted.

2. Condemnees introduced over objection exhibit 10, a plat and plans for a shopping center, the frontage access to which was the subject of the condemnation proceedings. The trial court admitted the exhibit in conjunction with a jury instruction that it was "only illustrative of the possible future use to which this property could have been put . . . that this exhibit is merely a plan and . . . there has been no construction on the property and the condemnees are submitting this document only to show the possible future use and market value of the property."

In its first enumeration of error, DOT contends that a plat of the property showing a non-existent situation is inadmissible under *Tift v. State Hwy. Dept.*, 99 Ga. App. 387, 393 (108 SE2d 724) (1959) which held that a plat of a subdivision which had not actually been subdivided was inadmissible because it presented an untruthful picture as to the situation which actually existed.

In arriving at the value of land taken for public purposes the court is not restricted to its use at the time of taking but inquiry may be made as to all legitimate purposes to which the property could be appropriated. *Moore v. State Hwy. Dept.*, 221 Ga. 392, 393 (144 SE2d 747) (1965). Here, in view of the cautionary instructions, we find no error in the admission of evidence tending to show uses for the property other than that for which it was being used when condemned. *State Hwy. Dept. v. Thomas*, 106 Ga. App. 849, 850 (1) (128 SE2d 520) (1962); *Gruber v. Fulton County*, 111 Ga. App. 71, 80 (5) (140 SE2d 552) (1965); *State Hwy. Dept. v. Stevens*, 128 Ga. App. 418, 420 (1) (196 SE2d 890) (1973). As pointed out in *Thomas*, supra at 850, the *Tift* case is authority for the proposition that in determining the reasonable probability that land can be used for a proposed purpose, the trial court has discretion in admitting or excluding evidence and its discretion will not be controlled unless abused. Even in *Tift*, which is the sole authority cited by DOT, the court recognized that the jury could consider what the land "was suitable for." *Tift*, supra at 393. We find no abuse.

3. Error (enumerations 2 and 3) is assigned to the testimony of two expert witnesses for the condemnees in that their testimony was

confined to evaluation of a plot 625 by 500 feet (that portion of the entire tract where access to Spur 40 was directly inaccessible) and did not measure up to the requirement of *Wright v. MARTA*, 248 Ga. 372, 376 (283 SE2d 466) (1981). That case affirmed: "The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstance just prior to the time of the taking compared with its market value in its new circumstance just after the time of the taking." Accord *Dept. of Transp. v. Whitehead*, 253 Ga. 150, 152 (2) (317 SE2d 542) (1984).

It is true that basically each witness testified on the assumption there was a 625-by-500 foot parcel to which the entire frontage access was taken. Both said, in effect, that the portion of land with the fence in front would have value only for residential purpose and not commercial use. According to the testimony of each witness, condemnees would suffer damages in excess of $400,000, the difference between commercial value and residential value for the 7-acre parcel located "behind the fence."

There was evidence that the highest and best reasonably probable prospective uses of the tract were a division into parcels for small commercial enterprises. Condemnees had begun to do that. Under that theory, of course, access all along the strip, or at least at short spaced intervals, would make the property more valuable whereas the taking of all direct access along 625 feet to a 7-acre portion would render that part of the property significantly less desirable to a potential commercial enterprise. The owner would have to seek rights-of-way through a neighbor's property. DOT's perspective, on the other hand, viewed the entire tract owned by condemnees as one, with plenty of direct access remaining to it.[1] The two theories clashed, and it became an evidentiary question to be determined by the jury as to which, in fact, was the valid one on which to base the proper measure of consequential damages to the remainder.

Whether the two experts' basis for valuation and assumptions was or was not entirely logical, the testimony was neither incompetent nor totally without evidentiary worth. The jury was properly instructed as to the measure of damages and its verdict was far less than either witness' opinion of the damage suffered.

As then Judge, now Justice Smith pointed out in *Dept. of Transp. v. Arnold*, 154 Ga. App. 502, 503 (268 SE2d 775) (1980): "The courts of this state have traditionally granted condemnees of land considerable leeway in presenting evidence bearing upon the market value of their condemned land." The competency of a witness to testify as to an opinion of value is a matter for the trial court's

---

[1] This is in part why DOT was entitled to the jury instruction discussed in Division 1 (c).

discretion. *Dept. of Transp. v. Great Southern Enterprises*, 137 Ga. App. 710, 712 (1) (225 SE2d 80) (1976); *Central Ga. Power Co. v. Cornwell*, 139 Ga. 1 (1) (76 SE 387) (1912). The credibility and weight of such evidence is then for the jury. *Dickens v. Adams*, 137 Ga. App. 564, 566 (5) (224 SE2d 468) (1976); *Toney v. Johns*, 153 Ga. App. 880, 882 (267 SE2d 298) (1980). In this case it was not error to permit the testimony and subject it to the jury's assessment.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 9, 1985 —
REHEARING DENIED JULY 31, 1985.

*J. Thomas Whelchel*, for appellant.
*Michael Perry, Charles C. Smith, Jr.*, for appellees.