23545. HOUSING AUTHORITY OF THE CITY OF DECATUR v. SCHROEDER.

Argued July 13, 1966—Decided September 8, 1966.

*George H. Carley, Claude E. Hambrick,* for appellant.
*George P. Dillard,* for appellee.
*Arthur K. Bolton, Attorney General, Richard L. Chambers, E. J. Summerour, Assistant Attorneys General, King & Spalding, Kirk McAlpin, R. Byron Attridge, Charles M. Kidd,* for party at interest not party to record.

ALMAND, Justice.  On November 2, 1964, the Housing Authority of the City of Decatur filed its petition in DeKalb Superior Court seeking to condemn a described tract of land of Mrs. Margaret P. Schroeder.  The condemnation of the property was sought as a part of an urban redevelopment project under the provisions of the "Urban Redevelopment Act" (Ga. L. 1955, p. 354; *Code Ann.* § 69-1101 et seq.).  Assessors were appointed,

and to their award both parties filed appeals to the superior court. On the trial of the case, there was a verdict and judgment awarding $21,700 to the condemnee, and the Housing Authority filed its motion for a new trial which was overruled. Ground 4 asserted that the trial court erred in giving the following charge to the jury: ". . . that the condemnee, Mrs. Margaret P. Schroeder, contends that the property in question has been fully, or substantially fully, rented for some time prior to the time it became general knowledge in the neighborhood that the property would be taken sometime in the immediate future for urban renewal purposes. And for this reason, the rental units became vacant and she was unable to rent them because of the possible imminent taking of the property for urban renewal purposes. If you find this to be true, you may take into consideration the rent such property was producing or had recently produced at the time of taking and give it such weight as you find it to bear in arriving at just and adequate compensation for the owner."

On appeal to the Court of Appeals, the judgment of the trial court was affirmed. In ruling on the assignment that the above quoted charge was error, the Court of Appeals in its opinion said, "Just and adequate compensation means putting the deprived landowner as nearly as possible back in the same monetary position he was in before the seizure occurred. The government may not depress the value of land, whether by signs causing the public to think the land has already been taken, or by public announcements indicating imminent seizure, so as to deprive the owner of the use to which the property is being put, and then contend that the depressed value is in fact the true value of the property on the date the technicalities of the 'taking' have been performed." *Housing Authority of the City of Decatur v. Schroeder,* 113 Ga. App. 432, 434 (148 SE2d 188). In the headnote corresponding to the first division of its opinion, the Court of Appeals held: "Where it appeared from the evidence that property involved in condemnation proceedings for urban renewal purposes was low rent housing in a slum area which had stayed substantially fully rented until activity by the political subdivision involved causing tenants to believe that its destruction was imminent, resulted in the property being vacated

for several months prior to the actual institution of eminent domain proceedings, it was proper to instruct the jury that this fact might be taken into consideration in arriving at just and adequate compensation. The value of income-producing property is not confined to its depreciated worth when the depreciation is itself due to the imminence of its seizure by a governmental agency." Id. at 432.

We granted the condemnor's application for the writ of certiorari. This ruling of the Court of Appeals was erroneous and contrary to prior decisions of this court. In the case of *Hard v. Housing Authority of the City of Atlanta,* 219 Ga. 74 (132 SE2d 25), this court, citing many prior cases, said "the demand of the Constitution, Art. I, Sec. III, Par. I, that 'just and adequate compensation' be first paid is imperative. *Code Ann.* § 2-301; Const. of 1945. It means that such payment cover its value at the time of taking." Id. at 76. The effect of the decision by the Court of Appeals is to hold that the value of the property at the time of taking is not the true value but its true value may be its value many rentals or years prior to the actual institution of condemnation proceedings.

In the supplemental brief of the condemnee, counsel states: "thus, it is clear that the Court of Appeals did not approve the finding of the value on some day other than the day of taking but approved the excerpt from the charge complained of as being a proper instruction of a factor to be considered." The record discloses that the petition of the condemnor alleged the date of taking as November 25, 1964. The record also shows that after the trial judge had instructed the jury that "after you have determined the issue of the fair market value of the property taken, then you will write a verdict in which you will find and report to the court that value. Your verdict will be in substantially the following language, Gentlemen: We, the jury find for the condemnee the sum of blank dollars. And you will fill in where I have said blank, the amount that you think is the fair market value of the property taken as of the 25th day of November, 1964," at the request of counsel for the appellee, the court instructed the jury as follows: "I charge you, Gentlemen of the Jury, that the condemnee denies that the date of taking

was November 25, 1964, and contends that that date was sometime prior to that. I further charge you that if you find that the taking took place prior to November 25, 1964, that you should find the fair market value of the property as of the date when you ascertain the property to have been taken." It thus appears that the jury were instructed that they could find the fair market value of the property as of a date other than that of the actual taking.

Though the condemnor assigns error on the ruling of the Court of Appeals in the third division of its opinion, the record discloses that in condemnor's motion for rehearing in the Court of Appeals, no claim was made in said motion that this particular ruling was error. Under Rule 52 of this court, this contention cannot be considered.

The judgment of the Court of Appeals is reversed.

*Judgment reversed. All the Justices concur.*