36853. METROPOLITAN ATLANTA RAPID TRANSIT
AUTHORITY et al. v. TRUSSELL et al.
36854. DEKALB COUNTY v. TRUSSELL et al.

UNDERCOFLER, Justice.

The DeKalb Superior Court granted an injunction against DeKalb County's quick taking condemnation on behalf of MARTA of a noise and vibration easement in the Sycamore Square condominiums on the grounds of misuse of power and lack of necessity and enjoined MARTA from running its trains over 18 miles per hour between the Decatur and Avondale stations on a nuisance

basis. MARTA (Case No. 36853) and DeKalb County (Case No. 36854) appeal. We affirm for the reasons stated in this opinion.

This is a vibration case and is not a noise case. As the MARTA subway trains pass through a tunnel under Sycamore Street they send out waves at a frequency of 16 hertz (cycles per second) which happens to be sympathetic with the geology and structure of the Sycamore Square condominiums so that the buildings resonate. The plaintiff/condemnees are the owners of these condominiums. The sensation in these homes is not one of hearing, but of feeling, as 16 hertz is below the normal hearing range of 20 to 20,000 hertz. There is accompanying noise, however, generated by the shaking of china, pictures and furniture within the buildings. The owners also claim resulting structural damage to their homes.[1]

Prior to construction, MARTA consulted with accoustical engineers who predicted, according to established standards at the time, that there would be no perceptible vibrations in the condominiums, but that there may be a noise problem. Recommendations were made as to how to avoid or reduce possible noise levels in the condominiums,[2] but this extensive study was not at all directed toward vibrations.

As soon as testing of the trains commenced in late 1978, it became obvious to the owners that the trains were having a significant impact on their lives and property. MARTA was immediately notified and courteous exchanges resulted in attempts to alleviate the problem. MARTA voluntarily discontinued testing in the early morning hours and reduced the speed of the trains. Meanwhile, MARTA began to explore other possibilities for solving the problem, including grinding the rails, which had no effect.

One of the solutions proposed was to add mass to the floating concrete slabs in order to reduce their natural resonance so that it

---

[1] Most owners testified to cracks and fissures in walls, ceilings and bathroom tiles, sifting of mortar from brick walls and fireplaces, separation of the patio and building walls, of the cabinets from the kitchen walls, and of the ceilings, walls and moldings.

[2] The industry noise standard is 30-35 dBA (decibels) in single family residences and 35-40 dBA for multi-family homes. The predicted noise was above this standard if the standard track bed was used. Engineers thus recommended that the use of a floating track bed, where the concrete slabs rest on 4 circular rubber pads, would reduce noise levels to about 42 dBA (give or take 5 dBA). They also suggested that MARTA might additionally reduce the noise level potential by digging the tunnel deeper, (it is only 17 feet away from the residences) or by increasing the thickness, and thereby the mass, of the concrete slabs to 3 feet instead of the standard 1 foot size. MARTA rejected these alternatives because digging the tunnel deeper costs an estimated one million dollars per foot in depth per track mile and because the triple thickness concrete slab was a new design for which no models existed and would, therefore, cause design delays. The actual noise level is about 37 dBA.

would no longer be in tune with that of the buildings. Adding lead would have tripled the mass, but MARTA refused this alternative because the estimated cost was about $1,250,000. MARTA did experiment with an addition of steel plates to the concrete slabs that doubled their weight. It was found, after tests, that this reduced the vibrations by about 9 dB, but, when the owners would not promise to be satisfied with this solution whatever the final results, MARTA did not complete the project it estimated at a total cost of $460,000.

After further negotiations failed, MARTA sought condemnation of a noise and vibration easement through DeKalb County, the condemning authority. Meanwhile, the homeowners filed to enjoin MARTA as a nuisance and for damages.

New tests were performed in July, 1980, because industry standards for acceptability of vibrations for moving trains became available for the first time from studies done over several years in Toronto, Washington, D.C., and Atlanta. At 16 hertz, the line of perceptibility of vibrations is 54 dB. Vibrations upstairs in one of the condominiums reached a high of 70dB, averaging 64 dB. MARTA seeks to condemn and easement at 94 dB.

1. The controlling question in this case is whether or not a noise and vibration easement may be acquired by eminent domain. We have not found, nor have the parties indicated, any instances wherein a condemning authority has been granted the power to damage property without also taking a property interest. This question is thus one of first impression.

The Georgia Constitution of 1976 provides that "[p]rivate property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid..." Ga. Const., Art. I, Sec. II, Par. I; Code Ann. § 2-301.[3] (Emphasis supplied.) We interpret this constitutional provision to allow the condemning authority to *"take" a property interest,* that is all or part of the fee, upon payment of compensation.[4] It does not, however, give these authorities the power to damage property without such a taking. The "damage" clause gives the injured citizen a constitutional cause of action against a public authority for injury to his property interests regardless of whether there is also a "taking." Thus the rights of an injured citizen are, in this sense, broader than the right of the public

---

[3] The Constitution also states that "[t]he exercise of the right of eminent domain shall never be abridged, nor so constructed as to prevent the General Assembly from *taking property and franchises,* and subjecting them to public use." (Emphasis supplied.) Ga. Const., Art. III, Sec. VIII, Par. II; Code Ann. § 2-1402. We do not find that our ruling conflicts with this constitutional provision, and is in fact supported by it.

[4] It is of course also liable for any consequential damages.

body to condemn.[5] See generally 11 McQuillin, 348 Municipal Corporations, § 32.38 (3rd Ed. 1977).

This construction is supported by the eminent domain statute, Code Ann. § 95A-601, enacted by the General Assembly pursuant to this constitutional provision. "Any property may be acquired *in fee simple or in any lesser interest,* including scenic easements, air space, and rights of access, by a State agency or a county or municipality through . . . eminent domain . . . for present or future public road or other transportation purposes." (Emphasis supplied.) This section clearly contemplates the taking of an actual property interest and nowhere implies the right merely to buy a right to damage. We do not find that the people, in adopting the constitution, or the General Assembly, in enacting this legislation, intended to allow a public body to condemn the right to damage property without also taking a property interest. A condemning authority may not purchase the right to shake the very walls and ceilings down upon the heads of those dwelling within.

Alternatives are available to the condemning authority: it may consistent with its constitutional authority condemn the fee, or it may continue construction with as many precautions as are necessary and practical and await the results. If damages nevertheless occur, those affected can bring a damage suit in inverse condemnation as provided in the constitution, wherein they will be compensated for the damages caused by the public body. This court has long recognized that noise (*Warren Co. v. Dickson,* 185 Ga. 481 (195 SE 568) (1938)), odors (*Kea v. City of Dublin,* 145 Ga. 511 (89 SE 484) (1916)) and smoke (*Holman v. Athens Empire Laundry Co.,* 149 Ga. 345 (100 SE 207) (1919)), are compensable *in inverse condemnation.* Accord, *Duffield v. DeKalb County,* 242 Ga. 432 (249 SE2d 235) (1978). In addition, the Court of Appeals in *Richmond County v. Williams,* 109 Ga. App. 670 (137 SE2d 343) (1964), held that permanent physical damage to a structure caused by vibrations from a pile driver during construction of a highway overpass fifty feet from the injured house was compensable. In *McFarland v. DeKalb County,* 224 Ga. 618 (163 SE2d 827) (1968) and in *Baranan v. Fulton County,* 232 Ga. 852 (209 SE2d 188) (1974), we held that a continuing nuisance caused by a public body may also properly be enjoined.

We believe that this construction of the Constitution is the better rule for two reasons. It encourages careful construction in order to

---

[5] This is consistent with the definition of property interest under the damage clause in inverse condemnation cases, which is broader than under direct condemnation where all or part of the fee is taken. Compare *Duffield v. DeKalb County,* 242 Ga. 432 (249 SE2d 235) (1978); *Bowers v. Fulton County,* 221 Ga. 731 (146 SE2d 884) (1966).

minimize as much as possible the intrusion to the neighbors by the public use. It also makes the assessment of damages more realistic. The new public facility will be in full operation and its actual effects will be known and assessable. Actual damages can then be computed. Consider here the situation if MARTA, through DeKalb County, had exercised the power to condemn a noise and vibration easement in 1975. The state of the art at the time led to the conclusion that there would be no vibration problem and only perhaps a noise problem of several decibels above what is considered acceptable in the industry. What damages could the Sycamore Square owners have anticipated or shown in the face of these expert opinions? Yet after construction and operation, the easement would have been bought and paid for, leaving them with little recourse except perhaps to file an inverse condemnation for the increased and uncompensated-for damages. Thus much has been gained and nothing lost by disallowing the condemning authority from direct condemnation of a mere right to damage without taking an accompanying property right.

The trial court thus correctly temporarily enjoined the condemnation under Code Ann. § 95A-607 (b) as a nuisance.[6] *Baranan v. Fulton County,* supra.

2. The conclusion in division one that DeKalb County does not have the power to condemn directly an easement to damage property without the taking of a property right moots the other enumerations of error in DeKalb County's appeal in Case No. 36854.

3. MARTA argues in Case No. 36853 that it acquired by quick taking the right to maintain the vibration nuisance, mooting the owner's suit for an injunction. Since we have held that the condemnation was properly set aside, the nuisance was properly temporarily enjoined. Thus there is no merit to MARTA's appeal in Case No. 36853.

*Judgments affirmed. All the Justices concur, except Jordan, C. J., Marshall and Clarke, JJ., who dissent.*

DECIDED JANUARY 27, 1981 —
REHEARING DENIED FEBRUARY 17, 1981.

*Kutak, Rock & Huie, Charles N. Pursley, Jr., Jo Lanier Meeks, Robert H. Walling,* for appellants.

---

[6] We here express no opinion as to the propriety of a permanent injunction. We note also that the damage claim is still pending below. *Baranan,* supra; *McFarland v. DeKalb County,* supra.

*Harvey, Willard, Elliott & Olsen, Wendell K. Willard, Billy Olsen,* for appellees.