## 43748. JOSH CABARET, INC. v. DEPARTMENT OF TRANSPORTATION.
### (353 SE2d 346)

PER CURIAM.

The Department of Transportation informed the corporation in the spring of 1981 that the building leased by it would be condemned for highway purposes. In June 1982, the Department sent to the corporation a letter, as follows: "This is to advise that due to the proposed construction of the above Highway project, you will be required to move your personal property from the above property. You will not be required to move from and surrender possession of the property prior to September 30, 1982, which is three months from the date of this letter. When title to the above property is secured, you will be notified, in writing, of the exact date you will have to remove your personal property." Two months later (and before the expiration of ninety days), the corporation removed its business to another site. Shortly thereafter, local government units withdrew their support for the highway project, and all work on the proposed highway, including all condemnation actions in progress, was halted.

The corporation sought to recover from the Department its loss of an advantageous leasehold interest, as well as expenses involved in moving. The trial court granted the Department's motion for summary judgment and the corporation appeals.

1. The corporation contends that the threat of condemnation "damaged" its leasehold interest to the extent that it accomplished an inverse condemnation under Art. I, Sec. III, Par. I of the Constitution of Georgia of 1983. ("[P]rivate property shall not be taken or damaged for public purposes without just and adequate compensation being first paid.")

2. Eminent domain is "the right of the state . . . to reassert . . . its dominion over [a person's property rights]," OCGA § 22-1-2, and the state must provide for just compensation to the owner for interference with his exclusive rights. OCGA § 22-1-5. "[T]here need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking." *Woodside v. City of Atlanta,* 214 Ga. 75, 83-4 (103 SE2d 108) (1958).

3. We have held that losses occurring to property before the actual date of taking are not compensable in direct condemnation actions. Thus, while there is a diminution in value as a result of anticipated condemnation, no compensation may be paid. *Housing Auth. of Decatur v. Schroeder,* 222 Ga. 417 (151 SE2d 226) (1966).

4. The corporation was advised that no move was required before September 1982, and that written notification would precede a required removal. Its decision to move in August 1982, was by voluntary

choice, and cannot be attributed to an interference by the Department with its exclusive rights of ownership, use and enjoyment.

5. Whether this action is characterized as direct or inverse condemnation, the losses claimed did not result from an exercise of eminent domain. Hence, as a matter of law, they are not compensable as damage or as taking. See *MARTA v. Fountain*, 256 Ga. 732 (352 SE2d 781) (1987).

*Judgment affirmed. All the Justices concur, except Clarke, P. J., Smith and Bell, JJ., who dissent.*

SMITH, Justice, dissenting.

This is another case in which the Department of Transportation (DOT) has with impunity trampled upon the property rights of an individual. If a private home instead of a "dance club" had been involved in this case, such high-handedness would not have been approved by the majority of this court.

"[T]he definition of property interest under the damage clause in inverse condemnation cases . . . is broader than under direct condemnation where all or part of the fee is taken." *MARTA v. Trussell*, 247 Ga. 148, 150 n. 5 (273 SE2d 859) (1981). The majority, thus, ignores a fundamental distinction when it relies on a direct condemnation case, *Housing Auth. of Decatur v. Schroeder*, 222 Ga. 417 (151 SE2d 226) (1966), to support the proposition that losses occurring before actual condemnation "are not compensable." Here, no direct condemnation has occurred, but damage to the appellant's property interest, a leasehold interest, has undoubtedly occurred as a result of the actions of the DOT and the local governments involved. The only question before this court, thus, should be whether that damage and the government's conduct fit the mold of an inverse condemnation action.

"The 'damage' clause gives the injured citizen a constitutional cause of action against a public authority for injury to his property interests regardless of whether there is also a 'taking.' " *Trussell*, supra at 150. "In [such an action], to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property . . . ." *Pause v. City of Atlanta*, 98 Ga. 92, 99 (26 SE 489) (1895). This "disturbance" may result from noise, odors, or smoke. See *Trussell*, supra at 151. The damage may likewise result from interference with access to the property caused by physical barriers that may actually lie outside of the property. *Dougherty County v. Hornsby*, 213 Ga. 114 (97 SE2d 300) (1957). In this case, Josh Cabaret, Inc. has produced evidence that actions taken by the DOT damaged its leasehold interest in its place of business. More specifically, the question properly before us is whether the non-physical nature of the DOT's interference with the property interest renders the alleged

damages inactionable as a matter of law.

The June 1982 letter from the DOT to Josh Cabaret, Inc. specifically stated:

"This is to advise you that due to the projected construction of the above highway project, you will be required to remove your personal property from [your place of business]. You will not be required to move from and surrender possession of the property prior to September 30, 1982, which is three months from the date of this letter. When title to the above property is secured, you will be notified, in writing, of the exact date you will have to remove your personal property."

This letter and other conduct intimating an impending condemnation are tantamount to physical coercion and interference with Josh Cabaret, Inc.'s property interest sufficient to support Josh Cabaret, Inc.'s contention that there was an inverse condemnation of Josh Cabaret, Inc.'s leasehold interest in its place of business. The trial court should thus have denied the DOT's motion for summary judgment.

DECIDED MARCH 5, 1987.

*Fine & Block, Paul R. Jordan,* for appellant.

*Michael J. Bowers, Attorney General, Beverly B. Martin, Assistant Attorney General,* for appellee.