77348. LEE v. DEPARTMENT OF TRANSPORTATION.
(380 SE2d 726)

SOGNIER, Judge.

The Department of Transportation condemned a 20 by 200 foot strip from a larger parcel of land owned by Julian Lee as part of the widening of Cleveland Avenue in Fulton County. After the trial court granted the DOT's motion in limine regarding evidence of consequential damages to the remainder of the property, the jury returned a verdict for the value of the taken property, as stipulated by the parties. Lee appeals.

The trial court erred by excluding evidence of the damages to appellant's remaining property caused by the condemnation which appellant incurred after the date of the taking of the frontage property. The record, as perfected by appellant, reveals that at the time appellant purchased the property, it was legally capable of accommodating a 14,000 square foot shopping center. The square footage amount was regulated by certain City of Atlanta building codes under which the maximum square footage of a commercial building was calculated according to the number of parking spaces available for the building. Appellant began, by razing the prior structures on the property and submitting building plans for a 14,000 sq. ft. structure pursuant to the City's building regulations, to develop his property for that purpose. Appellant applied for a building permit but before he could obtain approval to build a 14,000 sq. ft. structure and before the building could be constructed, the DOT announced its plan to widen Cleveland Avenue. Appellant was informed that the DOT

would have to condemn a 20 by 200 foot strip of his property fronting the avenue. Based on the calculated loss of parking spaces, only a 10,400 sq. ft. shopping center could be constructed on the remaining property, and the building permit issued by the City of Atlanta pursuant to appellant's application reflected that smaller structure.

The evidence is uncontroverted that frontage property was condemned and that appellant did lose the extra parking spaces necessary to support a 14,000 sq. ft. commercial building. The taking of the frontage property directly caused the reduction in the square footage of the building the remaining property could legally accommodate. The evidence appellant introduced detailed the damages to his remaining property from the difference in value between the 14,000 sq. ft. shopping center he could have constructed but for the loss of the parking space property taken by the DOT and the 10,400 sq. ft. shopping center he could legally construct on the remainder. However, the trial court excluded this evidence and prevented appellant from proving and recovering the consequential damages to his remaining property solely because the City of Atlanta, recognizing the impact the DOT's project would have on appellant's property, had rendered its decision permitting a 10,400, rather than a 14,000 sq. ft. building *prior* to the actual date of taking.

Appellant does not seek to recover compensation for lost rent or other damages to his remaining property incurred prior to the date of taking. The compensation appellant seeks stems from losses resulting from the 3,600 square foot diminution in the size of his shopping center after the taking. Appellant argues the trial court's evidentiary ruling on the DOT's motion in limine penalized him by preventing his recovery of compensation for losses directly caused by the condemnation dating *after* the taking merely on the basis that the City of Atlanta's decision to deny him a permit for the larger building was rendered *before* the taking. Appellant asserts that had the City delayed its decision until after the actual date of taking or had his 14,000 sq. ft. building been still in the planning stage as a future use of the property, his evidence would have been admissible, see, e.g., *Department of Transp. v. Pilgrim*, 175 Ga. App. 576, 578-579 (2, 3) (333 SE2d 866) (1985); *Klumok v. State Hwy. Dept.*, 119 Ga. App. 505 (1) (167 SE2d 722) (1969), as evidence tending to show the impact of the taking on plans for the remaining property, and thus to exclude appellant's evidence on the fortuity of the City's timing in rendering its decision would be inequitable. We agree.

It is irrelevant *when* a prohibition is placed on property where it is clear that the condemnation is the reason why the property failed to avoid that prohibition and where the damages sought are the damages occurring *after* the date of taking. In the case at bar, it is uncontroverted that the sole reason for the City's denial of appellant's per-

mit for a 14,000 sq. ft. building was its determination that the announced taking would eliminate the parking spaces necessary to accommodate the larger building and that the remaining property was legally able to support only the building with the lesser square footage. Thus, although appellant clearly cannot recover for damages incurred prior to the actual taking, see *Housing Auth. of Decatur v. Schroeder*, 222 Ga. 417 (151 SE2d 226) (1966), he is entitled to compensation, upon proper proof, for the difference between the building he could have built but for the direct result of the condemnation (14,000 sq. ft.) and the building he was limited to as a direct consequence of the taking (10,400 sq. ft.). See generally *Wright v. MARTA*, 248 Ga. 372, 376 (283 SE2d 466) (1981); *Continental Corp. v. Dept. of Transp.*, 185 Ga. App. 792, 793 (366 SE2d 160) (1988).

The DOT cites this court to *Department of Transp. v. Poole*, 179 Ga. App. 638 (347 SE2d 625) (1986). The DOT's reliance on *Poole*, however, is misplaced because appellant is not relitigating the denial of his building permit here or alleging that collusion existed between the DOT and the City in the denial of his permit. The validity of the City's decision to permit only a 10,400 sq. ft. building on appellant's property is not in issue: there is no suggestion that the City incorrectly calculated the square footage or misapplied its building codes, nor does it appear the City was required to wait until the property was actually condemned before ruling on appellant's permit. Since it is uncontroverted the condemnation did occur, the City's decision limiting the building size was correct and any appeal from that decision, contrary to the dissent's intimation, would have been futile.

*Josh Cabaret v. Dept. of Transp.*, 256 Ga. 749 (353 SE2d 346) (1987) does not preclude appellant from recovering post-taking damages sustained by the remaining property as a result of the taking. *Josh Cabaret* is an inverse condemnation case in which the appellant therein sought to recover expenses it had incurred in anticipating a taking that never materialized. The DOT in *Josh Cabaret* had announced plans to condemn the building in which appellant was a corporate lessee. Despite the DOT's express advice that no move was required before September 1982, appellant *voluntarily* moved in August 1982. Shortly thereafter, the DOT's project and all the condemnation actions were halted. Rejecting the corporate lessee's claim for damages, the Supreme Court held that "losses occurring to property before the actual date of taking are not compensable in direct condemnation actions. Thus, while there is a diminution in value as a result of anticipated condemnation, no compensation may be paid. [Cit.]" Id. at (3).

*Josh Cabaret* is inapplicable here because the losses appellant incurred were not the result of anticipated condemnation, but were the direct result of the condemnation itself, which fortuitously were man-

ifested prior to the date of actual taking. Furthermore, contrary to the dissent's contention, *Josh Cabaret* does not stand for the proposition that a condemnee cannot recover the diminution in the market value of his remaining property simply because the legal result of that taking under applicable building codes was announced prior to the actual taking, rather than subsequent to it. Nothing in *Josh Cabaret* supports the dissent's opinion that the result of the fortuitous timing of the City's denial of appellant's permit is to render inadmissible any evidence of the consequential damages to appellant's property stemming from the diminution in square footage on the theory that such damages are not compensable because they reflect a loss occurring to the property before the actual date of taking. To reach such an opinion is to misconstrue the language in *Josh Cabaret* as providing authority to deprive a condemnee of the just and adequate compensation due him under Art. I, Sec. III, Par. I of the Constitution of Georgia, 1983.

Therefore, since evidence reflecting the consequential damages to appellant's remaining property caused by the condemnation after the date of taking was improperly excluded on the basis that the City of Atlanta's decision to deny appellant a permit for the larger building was rendered *before*, rather than *after*, the actual date of taking, the trial court's order is reversed.

*Judgment reversed. Banke, P. J., Birdsong, Pope, Benham and Beasley, JJ., concur. Carley, C. J., Deen, P. J., and McMurray, P. J., dissent.*

DEEN, Presiding Judge, dissenting.

I must respectfully dissent from the majority opinion because I cannot agree with the majority's interpretation of *Josh Cabaret v. Dept. of Transp.*, 256 Ga. 749 (353 SE2d 346) (1987).

The majority contends that *Josh Cabaret* is distinguishable from the case at bar because the leaseholder in *Josh Cabaret* vacated the premises one month in advance of the announced condemnation, and the condemnation was cancelled before the announced date and consequently never occurred. In the instant case Lee's application for a building permit was filed during the winter of 1983, and in June 1983 the City of Atlanta denied the permit as submitted, on the basis that the DOT had announced in May 1983 that a critical strip of the land would be condemned. It was not until May of the next year, 1984, that the taking actually got under way, with DOT making Lee an offer for the strip in question. The fact that in *Josh Cabaret* the taking never actually occurred is of absolutely no legal significance vis-a-vis the issue here.

Thus on its facts the instant case is not, as the majority contends, distinguishable from *Josh Cabaret* on the basis asserted in the major-

ity opinion. In both cases the loss to the subject property occurred *after* the plans for condemnation were announced but *before* the actual date of taking; the losses incurred in *both* cases were the direct result of an *anticipated* condemnation.

Although I certainly concur in the majority's expression of a desire for a less "inequitable" result than that dictated by *Josh Cabaret*, the prerogative of altering the law to fit its own desires belongs not to the courts but to the legislature. The rule enunciated in *Josh Cabaret*, id. at 3, is clearly applicable to the facts of the instant case and should be controlling.

I therefore respectfully dissent. I am authorized to state that Chief Judge Carley and Presiding Judge McMurray join in this dissent.

DECIDED MARCH 10, 1989 —
REHEARING DENIED MARCH 23, 1989 — 

*Thomas L. Washburn III*, for appellant.

*Michael J. Bowers, Attorney General, Marion O. Gordon, First Assistant Attorney General, Roland F. Matson, Senior Assistant Attorney General, James S. Howell, Special Assistant Attorney General, Weiner, Dwyer, Yancey & Mackin, Dennis S. Mackin, J. Matthew Dwyer, Jr., Thomas C. Dempsey*, for appellee.