A92A1285. COLONIAL PIPELINE COMPANY v. WILLIAMS.
(425 SE2d 380)

JOHNSON, Judge.

Colonial Pipeline Company acquired an easement under land owned by James Williams pursuant to its power of eminent domain (OCGA § 22-3-80). The easement was obtained so that Colonial could install an underground cathodic protection device, a mechanism which protects the integrity of an existing underground petroleum pipeline system. Ultimately the case was tried by a jury, which returned a verdict in favor of Williams in the amount of $15,000. Colonial appeals from the judgment entered upon that verdict.

In its only enumeration of error, Colonial contends that the trial court erred in admitting testimony concerning a hypothetical division of Williams' undivided, unimproved 12-acre parcel of land into individual lots suitable for immediate residential development, and testimony as to the damages purportedly arising from the total loss of the value of one of those lots as a result of the condemnation. Colonial argues that this evidence was speculative, and therefore was improperly admitted.

Colonial's appeal relates only to the consequential damages portion of the jury's verdict. That portion of Williams' land under which the easement was actually taken consisted of .09 acres. Upon the testimony presented to the jury, the market value of the land taken for the temporary and permanent easements could not be greater than $1,500. Therefore the portion of the verdict in excess of $1,500 represents the award of consequential damages.

At trial, an expert witness described a method for subdividing Williams' 12-acre parcel of land into separate, identified lots suitable for immediate residential development. There was also expert testimony regarding the potential effect an underground cathodic device on a portion of one lot might have on the value of the remainder of that lot, as well as on the value of the other lots. This expert opined that under the hypothetical facts the owner would suffer a $20,000 consequential loss, and based his opinion upon the assumption that the full lot through which the easement ran would effectively be lost and therefore rendered valueless as a result of the condemnation. Further evidence was presented indicating that the condemnation would result in the complete devaluation of Williams' "best lot," causing consequential damages between $20,000 and $24,000.

Williams testified that he had considered surveying his land for subdivision use and had discussed this idea with a land surveyor, who

had told him that "it wouldn't be any big deal to [subdivide the property]." Three expert witnesses testified that the highest and best use of Williams' property was to subdivide it for residential development.

In condemnation proceedings, it is within the trial court's discretion to determine whether the evidence shows that the subject property is reasonably suited for a use different from its existing use, and it may admit or exclude evidence of value for such other use. Its rulings admitting or excluding such evidence will not be reversed unless there was a manifest abuse of its discretion. *Dept. of Transp. v. Great Southern Enterprises*, 137 Ga. App. 710, 713 (2) (225 SE2d 80) (1976). Consequential damages are recoverable in condemnation to compensate the property owner for loss incurred to the remainder of the property as a direct result of the taking. See *Simon v. Dept. of Transp.*, 245 Ga. 478 (265 SE2d 777) (1980). The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder just prior to the taking compared with its market value just after the taking. *Dept. of Transp. v. Pilgrim*, 175 Ga. App. 576, 579 (3) (333 SE2d 866) (1985).

In *Pilgrim*, we specifically relied upon the trial court's cautionary instructions that the evidence was admitted only because it was illustrative of the possible future use to which the property could be put. Thus, in the instant case, it would have been proper for the condemnee to submit evidence that, as a result of the taking, the market value of his remaining tract of land, considering the potential subdivision use, had been diminished *as of the date of the taking*. See *Housing Auth. of Decatur v. Schroeder*, 222 Ga. 417 (151 SE2d 226) (1966). The expert's testimony that the condemnee's property would be worth $20,000 to $24,000 less as a result of and after the taking was based solely upon that witness' opinion that the taking would deprive the condemnee of almost the full value of one of the hypothetically divided subdivision "lots." The problem with this testimony is that it values the remaining property as if the land were already subdivided. Thus, the $20,000-$24,000 figure placed on the "lot" by the expert was the retail value which would be paid by a purchaser of such a subdivision lot. "[T]he fact that the property is merely adaptable to a different use is not in itself a sufficient showing in law to consider such different use as a basis for compensation. It must be shown that such use of the property is so reasonably probable as to have an effect on the *present value* of the land. [Cit.]" (Emphasis supplied.) *Dept. of Transp. v. Great Southern Enterprises*, supra, 713. "Even where a different use is probable, . . . the jury cannot evaluate the property as though the new use were an accomplished fact; the jury can only consider the new use to the extent that it affects the market value *on the date of taking*." (Emphasis supplied.) Pursley, Ga. Eminent Domain, § 6-5.

Although the condemnee's expert could have testified to his opinion of the value of the remaining land as of the date of taking based upon its enhanced value because of its adaptability as a residential subdivision, he could not testify as to the value before and after the taking based upon his assumption of the value as if the property had already been subdivided. "Although an expert value witness may state his opinion of value without giving reasons therefor [cit.] where he does give reasons and those reasons appear to be wholly speculative or conjectural, his opinion is without foundation and without probative value. [Cit.]" *Merritt v. Dept. of Transp.*, 147 Ga. App. 316, 320 (248 SE2d 689) (1978), rev'd on other grounds, *Dept. of Transp. v. Merritt*, 243 Ga. 52 (252 SE2d 508) (1979).

We conclude that the trial court erred in admitting the challenged testimony, and a new trial is required.

*Judgment reversed. Carley, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 17, 1992.

*Smith, Gambrell & Russell, E. Kendrick Smith, Matthew S. Coles*, for appellant.

*Webb, Tanner & Powell, William G. Tanner*, for appellee.

