A96A0839. FLINT et al. v. DEPARTMENT OF
TRANSPORTATION.
(479 SE2d 160)

ANDREWS, Judge.

Four members of the Flint family appeal from the judgment entered on the jury's verdict setting a condemnation award for a fee taking of .7928 acre and an additional 1.6821 acres as a slope easement, contending the court erred in refusing to allow Moody, the Flints' expert appraiser, to testify regarding consequential damages and in its charge to the jury on expert witnesses.

1. The property was condemned December 15, 1992. At that time, the total property consisted of 7.684 acres of raw acreage,

which was zoned C-3, the highest commercial zoning class inside the city of Canton. Dr. Flint testified that, as of December 1992, the family had no site plans regarding any proposed development of the property, other than a previously done driveway site plan; there were no negotiations going on with any potential builder/developer; no engineering or soil studies had been done; no specific building plans had been prepared; and no potential income analysis of any kind of structure that could be placed on the property had been performed. As he stated, "at that time, we were not ready to develop the property. . . ."

Because of the configuration of the property, located between the Etowah River and the state highway, the Flints' appraiser, Moody, considered the property as two shelves or pads, one upper and one lower, for purposes of discussing future use in order to determine the claimed consequential damages to the remaining fee. He concluded that the lower shelf, consisting of 3.1 acres, would best be suited for a "fast food or a hotel/motel-type operation" and would generate a higher value than the upper 4.584-acre shelf. Because no proffer of proof was made regarding the upper shelf, we consider only the lower shelf on this issue.

Moody testified that, in his opinion, there had been a "gross infringement on the buildable area of this property, particularly in the easement area," and that the remaining fee suffered consequential damages from the taking. After being retained regarding the condemnation, Moody contacted Lusk and asked him to prepare a preliminary sketch of a proposed building for each shelf. Lusk spotted a building on each pad, both before the taking and after the taking. On the lower shelf, before the taking, a 24,000-square-foot building with 93 parking spaces could have been built, according to Lusk. After the taking, a 13,600-square-foot building with 60 parking spaces could have been built.

As stated by Moody, "[b]efore the taking, he could build a certain square foot facility that would generate a certain income. After the taking, he could put a lesser facility there that would generate a certain income." He then stated that "I developed a potential stream of income." The court then excused the jury and asked for a proffer of proof concerning the stream of income and how it could be related to consequential damages to the remaining fee, as opposed to business losses, of which there were none, since there was no business operating on the land at the time of taking. After a lengthy hearing, during which Moody attempted to explain how the operating income could be used to show the diminished value of the highest and best use "strictly as to the loss in square foot of buildable area," the court ruled that testimony concerning the reduced utility of the remainder would be allowed, based on the size of the pads being diminished, but

that no testimony would be allowed regarding any income stream or any analysis based on an income stream. Loss of buildable area had also been introduced by other witnesses. Asked by the Flints if Moody could put a figure on the value of the loss of buildable area, the court ruled Moody could give his opinion.

After a break in the proceedings, Flints' counsel announced that Moody was "not going at this time to testify to any value attributable to the loss of the footprint size of the building based on your ruling, because his opinion is, in fact, based on what our offer of proof was. . . . I'm not going to offer that — at this time."

Pretermitting the issue of whether counsel's statement evidenced a strategic abandonment of the effort to introduce this evidence at this point, there was no error in the court's ruling.

" 'The diminution in value of the remainder that is the measure of consequential damages should be measured as of the *date of the taking*. . . . The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstance *just prior* to the time of the taking compared with its market value in its new circumstance *just after* the time of the taking. (Cits.)' (Emphasis supplied.) *Wright v. MARTA*, 248 Ga. 372, 375-376 (283 SE2d 466) (1981)." *Dept. of Transp. v. Metts*, 208 Ga. App. 401, 403 (4) (430 SE2d 622) (1993).

"The admission of evidence of factors which may reasonably influence a prospective purchaser's decision is a matter within the discretion of the trial court. [Cit.]" *Dept. of Transp. v. Acree Oil Co.*, 266 Ga. 336, 337 (2) (467 SE2d 319) (1996). As pointed out in *Acree*, "business loss" in the standard, generic sense of that phrase, means the financial history of the property, i.e., something that a willing buyer would consider on the date of taking in arriving at the value of the property. Id.

It is appropriate for a jury to be allowed to inquire into " ' "all legitimate purposes, capabilities and uses to which the property might be adapted, *provided that such use (is) reasonable and probable and not remote or speculative*." (Cit.)' *Department of Transp. v. Kavanage*, 183 Ga. App. 143 (358 SE2d 464) (1987)." (Emphasis supplied.) *Cann v. MARTA*, 196 Ga. App. 495, 496-497 (2) (396 SE2d 515) (1990). It is "within the trial court's discretion to determine whether the evidence shows that the subject property is reasonably suited for a use different from its existing use, and it may admit or exclude evidence of value for such other use. Its rulings admitting or excluding such evidence will not be reversed unless there was a manifest abuse of its discretion. [Cit.]" *Colonial Pipeline Co. v. Williams*, 206 Ga. App. 303, 304 (425 SE2d 380) (1992).

The problem with the evidence proffered here, as in *Cann* and *Colonial Pipeline*, was that Moody's calculations were based solely on

hypotheticals and speculation. "The fact that the property is merely adaptable to a different use is not in itself a sufficient showing in law to consider such different use as a basis for compensation; it must be shown that such use of the property is so reasonably probable as to have an effect on the present value of the land. [Cits.]" *Dept. of Transp. v. Benton*, 214 Ga. App. 221, 222 (1) (447 SE2d 159) (1994).

No manifest abuse of discretion has been shown. *Lee v. Dept. of Transp.*, 191 Ga. App. 1 (380 SE2d 726) (1989), relied upon by the Flints, does not persuade us otherwise. There, development had been planned, site work had begun, and a building permit had been obtained.

2. The charge excepted to below and enumerated as error was as follows: "Testimony has been given in this case by certain witnesses who are termed experts. Expert witnesses are those who, because of their training and experience, possess knowledge in a particular field which is not common knowledge or known to the average citizen. The law permits expert witnesses to give their opinions based upon training and experience in a certain field. You are not required to accept the testimony of any witness, expert or otherwise. Testimony of an expert like that of all witnesses is to be given only such weight and credit as you think it is properly entitled to receive. Now, . . . , as I indicated to you, an opinion of an expert witness which is shown to your satisfaction to be based on a mistake of facts or mistakes of fact should not be considered by you and should be dismissed from your deliberations since it rests upon an improper basis, if that is shown. I further instruct you that certain witnesses in this case have testified based on certain assumptions which they have made as to access to property, and they have based their conclusions of value on these assumptions. I charge you that if you find that these assumptions as to access are not correct or are unreasonable, then I instruct you that you should disregard the conclusion of that witness as to that issue which you find to be based on such erroneous assumption as to access."

The objection made below was that this charge was "overly broad, and as a result of that, they could reject an entire opinion based on that particular portion of the charge."

We do not find the charge subject to the objection voiced. The charge, taken as a whole, allowed the jury to disregard the expert's conclusions to the extent they were based upon a mistake of fact. Since the jury was also properly charged that it alone determined the credibility of all witnesses and what testimony to believe and which not to believe, the objected-to charge was merely an amplification of this principle. There was evidence that Moody's initial calculations were based on a mistake regarding access to the property.

Additionally, "[p]rovided an expert witness is properly qualified

in the field in which he offers testimony, [cit.], *and the facts relied upon are within the bounds of evidence,* whether there is sufficient knowledge upon which to base an opinion or whether it is based upon hearsay goes to the weight and credibility of the testimony. . . ." (Emphasis supplied.) *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 592-593 (4) (452 SE2d 159) (1994). The instruction given is consistent with this principle and there was no error. *Dept. of Transp. v. Delta Machine &c. Co.*, 157 Ga. App. 423, 428 (5) (278 SE2d 73) (1981).

*Judgment affirmed. McMurray, P. J., and Smith, J., concur. Pope, P. J., disqualified.*

DECIDED DECEMBER 5, 1996 — 

*Hicks, Maloof & Campbell, Bruce M. Edenfield*, for appellants.
*Michael J. Bowers, Attorney General, James S. Howell*, for appellee.