**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 27, 2026**

# In the Court of Appeals of Georgia

A25A1752. UCS DIALS MILL ROAD, LLC et al v. GEORGIA DEPARTMENT OF TRANSPORTATION.

DILLARD, Presiding Judge.

UCS Dials Mill Road, LLC and Anderson-Wells II, LLC[1] filed a lawsuit against the Georgia Department of Transportation, asserting claims for inverse condemnation and attorney fees and seeking a declaratory judgment that a taking occurred based on allegations that a proposed DOT project to construct an interchange across part of State Route 316 will eliminate access to and use of their properties. The DOT moved to dismiss the complaint, and after a hearing, the trial court granted the motion. On appeal, the Appellants contend the trial court erred in (1) dismissing their inverse-

---

[1] For the sake of clarity, we refer to UCS Dials Mill Road, LLC as "UCS" and Anderson-Wells II, LLC as "AW," and UCS and AW collectively as the "Appellants."

condemnation claim because it was not ripe; (2) dismissing their declaratory-judgment claim because there is no justiciable controversy; (3) dismissing their complaint based on the sovereign-immunity doctrine; and (4) dismissing their claim for attorney fees. For the following reasons, we affirm the trial court's ruling but remand with direction.

Viewed in the light most favorable to the Appellants,[2] the record shows that SR 316 is a well known route linking the Atlanta metropolitan area with Athens. UCS owns 17.88 acres of property located at 2361 Dials Mill Road, which is adjacent to SR 316. AW owns six parcels of land, totaling 48.34 acres, and is similarly situated along SR 316 and Dials Mill Road. At all relevant times, the Appellants intended to develop their properties for commercial purposes and recently started doing so.

Several years ago, the DOT began taking steps to replace the numerous at-grade intersections[3] along the SR 316 corridor between Athens and metro Atlanta by constructing overpasses with on and off ramps at those intersections—with an aim

---

[2] See *Roberson v. Northrup*, 302 Ga. App. 405, 405 (691 SE2d 547) (2010) (explaining that, in ruling on a motion to dismiss, the trial court must "accept as true all well-[pleaded] material allegations in the complaint and must resolve any doubts in favor of the plaintiff" (punctuation omitted)).

[3] An "at-grade" intersection is one in which a road intersects a highway or other road at the same level (*i.e.*, the "grade"), usually with a two-way or four-way stop control.

toward eventually transforming the route into a limited-access highway. Currently, both Dials Mill Road and Dials Mill Extension—the two roads abutting the Appellants' properties—cross SR 316 at-grade; but around 2017, the DOT began considering whether to construct an interchange where Dials Mill Road crosses SR 316 to replace the existing at-grade intersection there and possibly at Dials Mill Extension as well. Several years later, on March 21, 2022, the DOT published and circulated a plan for the construction of an interchange at Dials Mill Road, which entailed closing the Dials Mill Extension at-grade intersection and realigning that road to connect to another spur road.

But several months later, residents in the Dials Mill plantation neighborhood complained that the proposed interchange would result in increased traffic near the entrance to their subdivision. And on June 1, 2023, the DOT published a revised plan, which proposed moving the interchange across SR 316 from Dials Mill Road to Dials Mill Extension. Crucially, the revised plan would close Dials Mill Road, limiting the Appellants' access to that road and eliminating their ability to access their properties via SR 316. But while the DOT published a "Notice of Location and Design Approval," publicly announcing its intent to move forward with the revised plan,

3

construction on the project has yet to commence. Indeed, the plan is currently in a preliminary phase.

Even so, on July 26, 2024, the Appellants filed a lawsuit against the DOT, asserting claims for inverse condemnation and attorney fees under OCGA § 13-6-11, and seeking a declaratory judgment that a taking occurred based on allegations that the DOT revised project to construct the interchange across SR 316 at Dials Mill Extension (rather than Dials Mill Road) will eliminate access to and use of their properties. They also filed a motion for interlocutory injunction, seeking to enjoin construction of the proposed interchange.

The DOT answered and moved to dismiss the complaint, arguing the Appellants' inverse-condemnation claim was premature because the construction project had yet to commence and, relatedly, no justiciable controversy existed to warrant a declaratory judgment, and that any other claims were barred by the sovereign-immunity doctrine. The DOT also filed a response to the Appellants' motion for an interlocutory injunction. The Appellants then filed a response to the DOT's motion to dismiss. But after conducting a hearing, the trial court denied the

Appellants' motion for an interlocutory injunction and granted the DOT's motion to dismiss. This appeal follows.

This Court reviews *de novo* a trial court's ruling on a motion to dismiss.[4] In doing so, we are tasked with determining whether the allegations of the complaint, "when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts."[5] But significantly, we need not "adopt a party's legal conclusions based on these facts."[6]

1. The Appellants first argue the trial court erred in dismissing their inverse-condemnation claim because it was not ripe. We disagree.

Inverse-condemnation claims draw their "meaning and remedies from the eminent domain provisions in the Fifth Amendment of the United States Constitution

---

[4] *Dove v. Ty Cobb Healthcare Sys., Inc.*, 316 Ga. App. 7, 9 (729 SE2d 58) (2012). *Carson v. Brown*, 348 Ga. App. 689, 699(2) (824 SE2d 605) (2019) (noting that we review a trial court's decision on a motion to dismiss *de novo*).

[5] *Dove*, 316 Ga. App. at 9 (punctuation omitted).

[6] *Id.* (punctuation omitted) See *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 87(1) (764 SE2d 398) (2014) ("While a trial court is required to consider a non-moving party's factual allegations to be true, it is not required to accept the legal conclusions the non-party suggests that those facts dictate.").

and Article I, Section III, Paragraph I of the Georgia Constitution, each of which protects against uncompensated 'takings.'"[7] More precisely, inverse condemnation is an action brought "by a private landowner under the [eminent-domain provisions] alleging the taking or damaging of the private property for public purposes without the initiation of eminent domain proceedings."[8] Of course, there need not be "a physical taking of the property or even dispossession; any substantial interference with the

---

[7] *Diversified Holdings, LLP v. City of Suwanee*, 302 Ga. 597, 605(III) (807 SE2d 876) (2017) (punctuation omitted). See U.S. Const. amend. V (providing that private property shall not "be taken for public use, without just compensation" ); Ga. Const. of 1983, Art. I, Sec. III, Par. I (a) ("Except as otherwise provided in this Paragraph, private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."). See also *Horne v. Dep't of Agric.*, 576 U.S. 350, 358 (II) (A) (1) (135 SCt 2419, 192 LEd2d 388) (2015) (Roberts, C.J.) ("The principle reflected in the [Takings] Clause goes back at least 800 years to [the] Magna Carta . . . ."); Letter from William Pierce to St. George Tucker (Sept. 28, 1787), GAZETTE OF THE STATE OF GEORGIA, Mar. 20, 1788, excerpted in THURSTON GREENE, THE LANGUAGE OF THE CONSTITUTION 614 (1991) ("I conceive civil liberty is sufficiently guarded when personal security, personal liberty, and private property, are made the peculiar care of government.").

[8] *Dep't of Transp. v. Mixon*, 312 Ga. 548, 548 n.1 (864 SE2d 67) (2021). See *Bray v. Dep't of Transp.*, 324 Ga. App. 315, 317(3) (750 SE2d 391) (2013) (explaining that an inverse-condemnation action is brought under the eminent-domain provisions of the Georgia Constitution, requiring the payment of compensation for the taking or damaging of private property for public purposes).

elemental rights growing out of ownership of private property is considered a taking."[9]

And significantly, the Supreme Court of Georgia has held that "sovereign immunity is waived when a private property owner asserts a claim for inverse condemnation[.]"[10]

Here, the Appellants argue the DOT's proposed plan to construct the interchange across SR 316 at the intersection with Dials Mill Extension and close the at-grade intersection at Dials Mill Road constitutes an inverse condemnation of their properties. More precisely, the Appellants maintain it will limit access to that road and eliminate the ability to access their properties from SR 316. The Appellants also claim the proposed plan will inflict the additional damage of preventing them from commercially developing their properties.

---

[9] *Josh Cabaret, Inc. v. Dep't of Transp.*, 256 Ga. 749, 749(2) (353 SE2d 346) (1987) (Per Curiam) (quotation marks omitted). Accord *Woodside v. City of Atlanta*, 214 Ga. 75, 83-84 (103 SE2d 108) (1958).

[10] *Kitchens v. Lincoln Cnty.*, 368 Ga. App. 349, 352 (890 SE2d 121) (2023). See *Mixon*, 312 Ga. at 548 ("This Court has long held that [the eminent-domain provision] waives sovereign immunity for inverse condemnation claims seeking monetary compensation."); *Rabun Cnty. v. Mountain Creek Estates, LLC*, 280 Ga. 855, 856(1) (632 SE2d 140) (2006) (noting that the eminent-domain provisions of Georgia Constitution waive sovereign immunity). See generally Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e) (extending sovereign immunity to the state and all of its departments and agencies, except as specifically provided in this paragraph, and providing that this sovereign immunity can be waived only by an act of the General Assembly that specifically provides for such waiver).

Even so, because the DOT has yet to begin construction on the proposed plan, the Appellants' inverse-condemnation claim is not yet ripe for adjudication and thus fails as a matter of law.[11] Indeed, they have not alleged that the DOT has started construction on the SR 316 interchange project, initiated condemnation proceedings as to their properties, or engaged in conduct directly interfering with their right to use, enjoy, or dispose of their properties. Rather, the Appellants assert their inverse-condemnation claim based on a proposed construction plan they characterize as imminent. But while they claim "an invasion of [their] property rights is probable,

---

[11] See *Cheeks v. Miller*, 262 Ga. 687, 688 (425 SE2d 278) (1993) (holding that "[t]he existence of an actual controversy is fundamental to a decision on the merits by this court," and a "controversy is justiciable when it is definite and concrete, rather than being hypothetical, abstract, academic, or moot," which is similar to federal courts, which "employ the doctrine of ripeness under the Article III requirement of a case or controversy.") (citation modified); *Sons of Confederate Veterans et al. v. Newton Cnty. Bd. of Commissioners*, 368 Ga. App. 511, 518 (890 SE2d 468) (2023) (Dillard, P.J., concurring dubitante) (noting that "[s]tanding is one of several doctrines of justiciability—including *ripeness*, mootness, and political questions—which are crucial limitations on the judicial power (be it state or federal) . . . determine which matters . . . courts can hear and decide and which must be dismissed . . . are closely tied to separation of powers . . . limit the power of the judiciary . . . and define the judicial role . . . ." (citation modified). See also *Texas v. United States*, 523 U.S. 296, 300 (118 SCt 1257, 140 LEd2d 406) (1998) (Scalia, J.) (noting that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citation modified).

indeed inevitable, if the [interchange] is constructed as planned, no such injury or taking exists at this time."[12] Moreover, even if the DOT's proposed plan has resulted in the Appellants' properties suffering a loss in value, the Supreme Court of Georgia has held that "losses occurring to property before the actual date of taking are not compensable in direct condemnation actions[, and] [t]hus, while there is a diminution in value as a result of anticipated condemnation, no compensation may be paid."[13] As a result, the trial court did not err in dismissing the Appellants' inverse-condemnation claim because it is not yet ripe.[14]

---

[12] *Dep't of Transp. v. Bonnett*, 257 Ga. 189, 190(1) (358 SE2d 245) (1987).

[13] *Josh Cabaret, Inc.*, 256 Ga. at 749(3). See *Dep't of Transp. v. Acree Oil Co.*, 266 Ga. 336, 336(1) (467 SE2d 319) (1996) ("Business losses occurring before the date of taking are not recoverable."). Accord *Dep't of Transp. v. Acree Oil Co.*, 266 Ga. 336, 336 (467 SE2d 319) (1996). See also *Thompson v. Dep't of Transp.*, 209 Ga. App. 353, 354(1) (433 SE2d 623) (1993) (explaining alleged losses in the fair market value of property attributable to an anticipated condemnation are not compensable elements of damage or a taking resulting from the exercise of eminent domain authority).

[14] See *Bonnett*, 257 Ga. at 190(1) (holding plaintiff's inverse-condemnation claim had yet to arise because the DOT highway plan, even if inevitable, had not yet begun); *Josh Cabaret, Inc.*, 256 Ga. at 749–50(1)–(5) (determining that a compensable taking had not yet occurred, despite diminution in value of plaintiff's property, when DOT notified plaintiff of proposed condemnation and date plaintiff needed to vacate its property, plaintiff vacated property early, but then DOT abandoned project); *Bailey v. City of Atlanta*, 296 Ga. App. 679, 680–82(1) (675 SE2d 564) (2009) (finding that because City never began construction on proposed sidewalk project that would have

2. The Appellants also contend the trial court erred in dismissing their declaratory-judgment claim that the proposed plan constitutes a taking because there is not justiciable controversy. Yet again, we disagree.

As the Supreme Court of Georgia has explained, the Declaratory Judgment Act provides a means by which a superior court "simply declares the rights of the parties or expresses its opinion on a question of law, without ordering anything to be done."[15] Indeed, the *codified* purpose of the Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."[16] More precisely, under the Act,

> [t]he superior court is authorized to enter a declaratory judgment upon petition therefor in cases of actual controversy, and to determine and settle by declaration any justiciable controversy of a civil nature where it

affected plaintiffs' property, plaintiffs' inverse condemnation claim failed as a matter of law).

[15] *Baker v. City of Marietta*, 271 Ga. 210, 213(1) (518 SE2d 879) (1999) (punctuation omitted). See *DeKalb Cnty. v. City of Chamblee*, 369 Ga. App. 503, 505(1) (894 SE2d 59) (2023) (noting that under OCGA § 9-4-2(a)-(b), superior courts in Georgia have the power to declare the rights and other legal relations of any interested party in cases of actual controversy and in any civil case in which it appears to the court that the ends of justice require that the declaration be made).

[16] OCGA § 9-4-1.

appears to the court that the ends of justice require that such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his rights, status, and legal relations.[17]

Importantly, no declaratory judgment may be obtained "which is merely advisory or fruitless, or which merely answers a moot or abstract question."[18] Nevertheless, to state a claim for declaratory judgment, a party "need only allege the existence of a justiciable controversy in which future conduct depends on resolution of uncertain legal relations."[19]

Here, the Appellants asked the trial court to determine whether the DOT's proposed plan to construct the interchange across SR 316 at the intersection with Dials

---

[17] *Baker*, 271 Ga. at 213(1) (citations and quotation marks omitted). See *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 299 Ga. 26, 28(1) (785 SE2d 874) (2016) (holding declaratory relief is authorized when there is "a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest" (citation and punctuation omitted)). See also OCGA § 9-4-2(a)-(b).

[18] *Baker*, 271 Ga. at 214(1) (citations and quotation marks omitted). Accord *Publix Super Market, Inc. v. Rockdale Cnty.*, 375 Ga. App. 94, 97 (913 SE2d 851) (2025).

[19] *City of Atlanta v. Hotels.com*, 285 Ga. 231, 234 (674 SE2d 898) (2009). Accord *DeKalb Cnty.*, 369 Ga. App. at 505(1).

Mill Extension and close the at-grade intersection at Dials Mill Road amounted to a taking of their properties without just compensation. But they face no uncertainty as to their future behavior because it is the DOT's *possible future* conduct that is at issue. Significantly, declaratory relief is authorized

> when there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest.[20]

The Appellants, however, *currently* face "no uncertainty or insecurity as to any of [their] *own* future conduct, but rather seek[ ] an adjudication only of issues that will impact the future conduct of the [DOT]."[21] Indeed, as they merely seek to determine the propriety of the DOT's actions (and not of their own), they "cannot maintain a declaratory judgment action."[22] Moreover, the DOT's proposed construction plan has

---

[20] *Love v. Fulton Cnty. Bd. of Tax Assessors*, 311 Ga. 682, 696(3)(c) (859 SE2d 33) (2021) (citation and punctuation omitted), *disapproved of on other grounds by Bray v. Watkins*, 317 Ga. 703, 704–05 (895 SE2d 282) (2023). Accord *DeKalb Cnty.*, 369 Ga. App. at 505(1).

[21] *SJN Props. v. Fulton Cnty Bd. of Assessors*, 296 Ga. 793, 803(2)(b)(iii) (770 SE2d 832) (2015) (punctuation omitted) (emphasis in original).

[22] *DeKalb Cnty.*, 369 Ga. App. at 506(1).

yet to begin, and declaratory judgment "will not be rendered based on a possible or probable future contingency."[23] The trial court did not err, then, by granting the DOT's motion to dismiss the Appellants' claim for declaratory judgment.[24]

3. The Appellants further maintain the trial court erred in dismissing their complaint based on the sovereign-immunity doctrine. But given our holding in Divisions 1 and 2, *supra*, that the court did not err in dismissing the Appellants' claims for inverse condemnation and declaratory judgment (their only non-derivative claims), this contention is moot and we need not address it.

---

[23] *Bailey*, 296 Ga. App. at 682(1) (quotation marks omitted).

[24] See *SJN Props.*, 296 Ga. at 803(2)(b)(iii) (holding that when plaintiff faced no uncertainty as to any of its own future conduct, but only sought an adjudication of issues impacting the future conduct of board of tax assessors, its claim for declaratory relief could not be maintained); *Lewis v. City of Brunswick*, 375 Ga. App. 56, 60–61(1)(b) (913 SE2d 755) (2025) (finding that plaintiff had no claim for declaratory judgment when he sought to require City to provide proof related to removed monument because plaintiff faced no uncertainty as to his own future conduct, but sought adjudication only of issues that would impact future conduct of city); *DeKalb Cnty.*, 369 Ga. App. at 504–06(1) (explaining that because City did not face any uncertainty as to any of its own future conduct but only sought an adjudication of issues that would impact the future conduct of county, City failed to state a claim for declaratory relief); *Bailey*, 296 Ga. App. at 682–83(1) (holding that as City never began its plan to install sidewalks affecting plaintiffs' property, plaintiffs were not entitled to a declaratory judgment based on a future possible event).

4. Lastly, the Appellants claim the trial court erred in dismissing their claim for attorney fees under OCGA § 13-6-11. But the expenses of litigation recoverable under OCGA § 13-6-11 are "ancillary and may only be recovered where other elements of damage are also recoverable."[25] So, because attorney fees under OCGA § 13-6-11 are "ancillary and recoverable only if [Appellants] prevail[ ] on the other underlying claims, which [they have] not, the trial court properly dismissed this claim as well."[26]

Finally, because we have held the Appellants' inverse-condemnation claim is not yet ripe because the DOT has not started construction on the proposed interchange plan, the trial court should not have denied this claim on the merits but "should have dismissed [it] without prejudice."[27] The involuntary dismissal of a declaratory-judgment action for want of justiciability "does not operate as an

---

[25] *Cabrel v. Lum*, 289 Ga. 233, 240(6) (710 SE2d 810) (2011) (quotation marks omitted). See *Atlanta Partners Realty, LLC v. Wohlgemuth*, 365 Ga. App. 386, 395(3) (878 SE2d 615) (2022) ("Attorney fees under OCGA § 13-6-11 are ancillary, and thus a party is not entitled to such fees unless she prevails on the underlying claims.").

[26] *Stockton v. Shadwick*, 362 Ga. App. 779, 789(2)(d) (870 SE2d 104) (2022). See *Tomala v. Harris*, 374 Ga. App. 706, 711(2) (913 SE2d 809) (2025) (holding that because plaintiff's underlying claim failed, his claim for attorney fees also failed).

[27] *Bonnett*, 257 Ga. at 190(2).

adjudication on the merits and is instead an issue of subject-matter jurisdiction."[28] As a result, this dismissal "must [also] be without prejudice."[29] But here, the trial court's order does not specify "whether the complaint was dismissed with or without prejudice, and we presume that actions have been dismissed with prejudice when a motion is granted under OCGA § 9-11-12(b)(6)."[30] As a result, we remand this case to the trial court for entry of an order dismissing the Appellants' complaint without prejudice.[31]

For all these reasons, we affirm the trial court's judgment as to the Appellants' complaint but remand for the entry of an order dismissing it without prejudice.

*Judgment affirmed and case remanded with direction. Mercier, J., and Senior Judge C. Andrew Fuller, concur.*

---

[28] *Murray v. Lexington Park of Fulton Cnty. Community Ass'n, Inc.*, 372 Ga. App. 269, 274(2)(c) (904 SE2d 119) (2024) (quotation marks omitted).

[29] *Id.* (quotation marks omitted).

[30] *Id.*

[31] See *Bonnett*, 257 Ga. at 190(2) (holding that trial court's dismissal of plaintiff's condemnation claim because it was premature should have been without prejudice); *Murray*, 372 Ga. App. at 274(2)(c) (concluding that involuntary dismissal of a declaratory-judgment action for want of justiciability does not operate as an adjudication on the merits and is instead an issue of subject-matter jurisdiction; accordingly, dismissal must be without prejudice).